131 T.C. No. 7


UNITED STATES TAX COURT


JT USA LP, JOHN ROSS AND RITA GREGORY, Partners Other than
The Tax Matters Partner, Petitioners v.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 5282-05.               Filed October 6, 2008.


        R issued a notice of final partnership administrative
adjustment (FPAA) to partnership J and its partners without
providing a notice under sec. 6223(a), I.R.C.  Ps, partners
of J other than the tax matters partner, attempted to elect
out of the partnership-level proceeding only in their
capacity as indirect partners.

        Held:  Section 6223 allows partners holding different
partnership interests in the same partnership to make
different elections for each interest.  Ps' election,
otherwise conforming to the requirements of sec.
301.6223(e)-2T(c), Proced. & Admin. Regs., is therefore
effective.

        Held, further:  The tax matters partner of J may be
substituted as petitioner, and Ps will be stricken from the
case in their capacity as indirect partners.

Ernest S. Ryder, Richard V. Vermazen, and Lauren A. Rinsky, for petitioners.

Johnathan H. Sloat and Donna F. Herbert, for respondent.


OPINION


HOLMES, Judge: In the 1970s, John Ross Gregory and his wife Rita founded the business which became JT USA, LP. It was very successful in selling accessories to enthusiasts of motocross and paintball. Over 20 years later the Gregorys decided to sell, and were faced with the problem of a large tax on a very large capital gain. Their solution was to use an alleged tax shelter to create losses large enough to offset their gain. The Commissioner has challenged those losses, but the Gregorys think they've found a way to keep them, or at least greatly increase the odds of keeping them, because of a procedural flub by the IRS.

## Background

The Gregorys were both pharmacists near San Diego when John, an off-road motorcycle enthusiast, started selling motorcycle socks at a local dirt track. The small side business was a success and JT USA was born. The company focused first on motocross accessories, but when that market started to become crowded in the early 1990s, the Gregorys expanded their operation to include accessories for paintball. Paintballing took off, and

JT USA took off with it.[1]  In less than a decade, it had become so successful that a superpower of paintball-equipment manufacturers, Brass Eagle, Inc., was willing to pay $32 million in cash for the business's assets.

When Brass Eagle became interested, JT USA's ownership structure was already a bit involved:[2]



---

[1] http://www.jtusa.com/company/about_us/

[2] The JT USA partnership tax return for the 2000 tax year shows partnership interests "before change or termination" totaling 118.84%.  We believe this is because of the shifts in ownership during the year, though there is no explanation in the record.  The exact ownership percentages don't affect our decision.

JT Racing, LLC (JTR-LLC) was the general partner and JT Racing, Inc. (JTR-Inc.), an S corporation, was a limited partner.  The other direct, but limited, partners at the beginning of 2000 were the Gregorys themselves, their two daughters, and their grandson.

By the time of the asset sale, JT USA's ownership had been scaled back and was wholly owned by the Gregorys indirectly through JTR-LLC and JTR-Inc.:



The individual limited partners had sold back their partnership interests[3] so that the only partners were JTR-LLC and JTR-Inc. as the general and limited partner, respectively.  This change in ownership was part of a larger reorganization of interests that the Gregorys undertook to minimize or eliminate their income tax

_____

[3] The record states that JT USA redeemed the partnership interests of the two daughters and the grandson; it doesn't explain what happened to the Gregorys' partnership interests except to indicate that they no longer had direct ownership interests in JT USA by the end of the year.

on the asset sale through an alleged Son-of-BOSS transaction.[4]
They also created a new general partnership called Gregory Legacy
Partners whose partners consisted of the Gregorys (as trustees of
a revocable family trust), the Gregorys' daughters, their
grandson, and JT USA.

All of this was done to help make the alleged Son-of-BOSS
transaction work, adding even more complexity to an already
complex business structure.  In November 2000, the Gregorys
executed a short sale of treasury notes[5] and then contributed the
proceeds and obligation to replace those notes (along with some
separately purchased stock) to JTR-Inc. as a nontaxable addition
to the capital of a corporation under section 351(a),[6] allegedly
receiving a basis in the newly acquired JTR-Inc. stock of a
little more than $37.2 million.[7]  JTR-Inc. then contributed the
cash, obligation, and additional stock to JT USA as a nontaxable
contribution to the capital of a partnership under section

_____

[4] See Kligfeld Holdings v. Commissioner, 128 T.C. 192
(2007), for a description of these transactions.

[5] See Kligfeld Holdings, 128 T.C. at 195 n.6, for an
explanation of the short sale and see id. at 195-98, for an
explanation of how taxpayers use a short sale in Son-of-BOSS
deals.

[6] Unless otherwise noted, all section references are to the
Internal Revenue Code in effect for the years at issue; all Rule
references are to the Tax Court Rules of Practice and Procedure.

[7] Sec. 351(a) ("General Rule.--No gain or loss shall be
recognized if property is transferred to a corporation by one or
more persons solely in exchange for stock in such corporation and
immediately after the exchange such person or persons are in
control (as defined in section 368(c)) of the corporation.").

721(a), allegedly receiving a basis in the partnership interest of $37.2 million.[8]  Finally, JT USA contributed the cash, obligation, and additional stock to Legacy Partners as a nontaxable contribution to that partnership's capital, also allegedly receiving a basis in its partnership interest of about $37.2 million.  When everything was finished, the structure looked like this:



---

[8] Sec. 721(a) ("General Rule.--No gain or loss shall be recognized to a partnership or to any of its partners in the case of a contribution of property to the partnership in exchange for an interest in the partnership.").

In December 2000, Legacy Partners redeemed JT USA's partnership interest for $4.1 million--the fair market value of the interest at that time. With its alleged basis of $36.6 million,[9] JT USA claimed a capital loss of $32.5 million. That loss more than offset the capital gain from the sale to Brass Eagle, which in turn meant that JTR-LLC and JTR-Inc. could supposedly claim a flow-through capital loss instead of a huge flow-through capital gain--and the Gregorys, as sole members and shareholders of those organizations, could supposedly do the same.

JT USA timely filed its 2000 tax return. The Commissioner challenged the transaction by sending a notice to JT USA on October 15, 2004, just before the statute of limitations would expire. But with this notice, he also sent the following letter, which we quote at length because of its significance:

> We were unable to mail you the notice of beginning of administrative proceeding * * * before the conclusion of the partnership proceeding. Therefore, under Section 6223(e)(2) of the Internal Revenue Code, you have the right to elect to have your partnership items treated according to either [this notice], a final court decision, or a settlement agreement with any partners for the taxable year to which the adjustment relates. If you do not make this election, the partnership items for the partnership

---

[9] These figures are from JT USA's 2000 Schedule D, Capital Gains and Losses, and as the Commissioner noted there are some inconsistencies between the partnership Schedule D and the Schedules K-1 Partner's Share of Income, Credits, Deductions, etc., but the differences don't affect our decision.

> taxable year to which the proceeding relates shall be treated as nonpartnership items.
>
> To elect to have your interest in the partnership items treated as partnership items, you must file a statement of the election with my office within 45 days from the date of this letter.  It is required that the statement:
>
> (1)  Be clearly identified as an election under Internal Revenue Code Section 6223(e)(3);[10]
>
> (2)  Specify the election being made (i.e. application of final partnership administrative adjustment, court decision, or settlement agreement);
>
> (3)  Identify yourself as a partner making the election and the partnership by name, address and taxpayer identification number;
>
> (4)  Specify the partnership taxable year to which the election relates; and
>
> (5)  Be signed by the partner making the election per Treasury Reg. § 301.6223(e)-2.

This was almost certainly a form letter, and the Commissioner concedes it was the wrong form letter.  See _infra_ p.14, n.12.  But the Gregorys responded to it a total of four times.  John and Rita each sent a "Statement of Election by Indirect Partner Under Section 6223(e)(3)," which asked to have the "partnership items of the Indirect Partner treated as nonpartnership items."  These Statements then went on to say:

---

[10] Note this reference to (e)(3) rather than (e)(2), as mentioned in the first paragraph--it'll turn out to be important.

"The undersigned who is an Indirect Partner is also a Direct Partner of the Partnership. This election does not apply to the undersigned as a Direct Partner." They also each sent a "Statement of Election by Direct Partner Under Section 6223(e)(3)," which asked to have the "partnership items of the Direct Partner treated as partnership items" and stated:

> This election is made in response to IRS correspondence dated October 15, 2004, a copy of which is attached hereto for your reference, which correspondence seems to imply that a partner must elect to be a party to the proceeding in order to have partnership items treated as partnership items, and pursuant to Regulation Section 301.6223(e)-2T which applies to partnership taxable years beginning prior to October 4, 2001.

The Gregorys sent all four statements of election on November 29, 2004.

In March 2005, the Gregorys filed a petition with this Court. In November 2006, the Gregorys moved to strike themselves as indirect partners from this case--arguing that they had properly opted out of the proceedings. As part of the same motion, they also requested that we grant JTR-LLC permission to take over the case in their stead.

Because of the importance of the issue, the Court held oral argument on the motion in San Diego--both Gregorys were California residents when they filed the petition, and the partnership had its principal place of business in California.

We must now decide (1) whether the Gregorys met the requirements for electing to opt out; (2) whether their elections out as indirect partners were effective; and (3) who the proper parties will be in this proceeding.

## Discussion

The Tax Equity and Fiscal Responsibility Act of 1982 (TEFRA), Pub. L. 97-248, 96 Stat. 324, is a set of special tax and audit rules that automatically applies to all partnerships with exceptions that aren't relevant here. Sec. 6231(a)(1). One of these rules requires JT USA to designate one of its partners as the tax matters partner (TMP) to handle its administrative issues with the Commissioner and manage any resulting litigation. Sec. 6231(a)(7). JT USA's TMP is JTR-LLC.

The goal of TEFRA is to have a single point of adjustment for all partnership items at the partnership level, thereby making any adjustments to a particular partnership item consistent among all the various partners. See Kligfeld Holdings, 128 T.C. at 199-200. TEFRA procedures generally apply if the adjusted item is a "partnership item," defined as any item "more appropriately determined at the partnership level than at the partner level." Secs. 6221, 6231(a)(3). Partnership items include the income, gains, losses, deductions and credits of a partnership. Sec. 301.6231(a)(3)-1, Proced. & Admin. Regs. Nonpartnership items are those that aren't partnership items--and

their tax treatment is determined at the individual level.  Sec.
6231(a)(4).  Finally, "affected items" are those that are
affected by the determination of a partnership item.[11]  Sec.
6231(a)(5); see Ginsburg v. Commissioner, 127 T.C. 75, 83 (2006)
(outlining the different categories of adjustments under TEFRA).

This adjustment of partnership items is done through a
formal process which--if everything is working as it's supposed
to--starts with the IRS sending a notice at the beginning of an
audit to each "notice partner," defined as a "partner whose name
and address is furnished to the [Commissioner]."  Secs. 6223(a),
6231(a)(8).  This notice alerts the partners that an audit is
underway, and gives them a chance to participate.  See generally
secs. 6223 and 6224.  The Gregorys filed the petition in this
case under subsection 6226(b) in their capacity as notice
partners--thus the caption identifying them as "partners other
than the tax matters partner."  Once the Commissioner completes
the audit, but no sooner than 120 days after he sends the first
notice, he is supposed to send out a Notice of Final Partnership

---

[11] Affected items come in two varieties.  The first are
purely computational adjustments which reflect changes in a
taxpayer's tax liability triggered by changes in partnership
items.  Sec. 6231(a)(6).  The second are adjustments (other than
penalties, additions to tax, and additional amounts that relate
to adjustments to partnership items, see sec. 6226(f)) that
require the Commissioner to follow normal deficiency procedures
because the adjustments depend on factual determinations that
have to be made at the individual partner level.  Sec.
6230(a)(2)(A)(i); see also Adkison v. Commissioner, 129 T.C. 97,
102 (2007).

Administrative Adjustment (FPAA) to the TMP outlining any changes to be made.  Sec. 6223(d)(1).  The Commissioner then sends the FPAA to other notice partners within 60 days.  Sec. 6223(d)(2).

The TMP has 90 days from the date the FPAA is sent to file a petition to contest any adjustments that the FPAA proposes.  Sec. 6226(a).  If he doesn't, the window for challenging the FPAA stays open for 60 more days during which any notice partner can start a case.  Sec. 6226(b).  Once there's a determination of all the partnership-level items--either because no one challenges the FPAA or because a decision in the case challenging the FPAA becomes final--the Commissioner may begin deficiency proceedings against any partner with affected items that require a partner-level proceeding, and may immediately assess the amount due against any other partners with affected items that don't.  Sec. 6230(a)(1) and (2).

The IRS is a large organization, and Congress had the foresight to enact rules to apply after the inevitable snafus, including the snafu that happened here--the Commissioner's sending out an FPAA just in time to beat the statute of limitations but without any notice that audit proceedings had begun.  The Code has two default rules that might apply in this situation.  If the Commissioner waits so long to notify a partner that the time to challenge the FPAA in court has passed, the default rule is that an unnotified partner's partnership items

are treated as nonpartnership items unless the partner "opts in" to the proceedings; for example, if an unnotified partner learns of a favorable settlement agreement that he would like to glom onto. Sec. 6223(e)(2). If, however, the Commissioner notices his mistake before the FPAA becomes unchallengeable, the default rule is that an unnotified partner's partnership items remain partnership items subject to the outcome of the partnership-level proceeding unless the partner "opts out," at which point those items become nonpartnership items. Sec. 6223(e)(3). Any items that become nonpartnership items under section 6223(e) are subject to the standard deficiency procedures of sections 6211 through 6216. Sec. 6230(a)(2)(A)(ii). And the Commissioner generally has one year from the time a partner's partnership items become nonpartnership items to send a notice of deficiency to that partner. Secs. 6229(f)(1), 6503(a).

The problems in this case began when the IRS sent the FPAA to JT USA just before the statute of limitations was to expire. None of JT USA's partners received an advance notice that an audit was coming, but sending them the FPAA meant they did get notice before the time to challenge the adjustments proposed by the FPAA had run. This meant that the default rule of (e)(3), not (e)(2), applied and any partner entitled to receive notice

had the right to opt out and not the right to opt in.[12]  The
Gregorys tried to do just that in their capacity as indirect
partners.  The FPAA proposed adjustments only to partnership
items reflecting the alleged Son-of-BOSS transaction.  By the
time JT USA did that transaction, the Gregorys argue, their
entire interest was held only in their capacity as indirect
partners.  So if we determine that their election was valid, they
may well not be subject to any deficiency proceedings since their
attempted election was made more than one year ago.

A.    The Gregorys' Election

The regulations have specific requirements for an election
to opt out of TEFRA proceedings.  For the 2000 tax year, those
requirements were listed in section 301.6223(e)-2T(c), Temporary
Proced. & Admin. Regs., 52 Fed. Reg. 6785 (Mar. 5, 1987):

> 1.    The election must be made within 45 days
>        after the FPAA was mailed; and

---

[12] The Commissioner has conceded that the original notice
sent to the Gregorys with the FPAA was incorrect and should have
been a notice giving the partners the option to opt out of the
TEFRA proceedings under section 6223(e)(3).  However, section
6223(e)(3) is only available to partners entitled to receive
notice in the first place. Sec. 6223(e)(1).  The Gregorys were
entitled to notice as direct partners since they were named on
the partnership return, but it is unclear if that means they were
also entitled to notice as indirect partners.  The regulation
suggests that they were.  See sec. 301.6223(e)-1T(b)(1),
Temporary Proced. & Admin. Regs., 52 Fed. Reg. 6784 (Mar. 5,
1987).  In any event, the parties did not raise the issue of
what, if any, effects that possible distinction might have for
this case.

2.   The statement must:

    a.   Clearly identify that it's an election under section 6223(e)(3),

    b.   Specify that the election is to have partnership items treated as nonpartnership items,

    c.   Identify the electing partner and the partnership by name, address, and taxpayer identification number,

    d.   Specify the partnership taxable year to which the election relates, and

    e.   Be signed by the electing partner.

The election, once made, "shall apply to all partnership items for the partnership taxable year to which the election relates." Sec. 301.6223(e)-2T(c)(1), Temporary Proced. & Admin. Regs., 52 Fed. Reg. 6785 (Mar. 5, 1987).

The Gregorys have shown:

- They made the elections exactly 45 days after the IRS sent the FPAA to the TMP;

- Each election clearly stated that it was "made by the undersigned pursuant to Section 6223(e)(3)(B) of the Internal Revenue Code to have the partnership items of the Indirect Partner treated as nonpartnership items";

- Each election also clearly stated the identity of both the indirect partner and the partnership by name, address, and taxpayer identification, as well as the partnership taxable year to which the election related;

- None was signed by the Gregorys themselves, but the Commissioner has since conceded that

their power of attorney sufficed to allow him to sign on their behalf.

The most important question left in the case, though, is whether their election is valid in the light of their choice to limit it only to all partnership items in their capacity as indirect partners.

B.    Effect of the Gregorys' Elections

The Commissioner focuses on the language of section 6223(e)(3)(B)--"to have the partnership items of the partner * * * treated as nonpartnership items"--and insists that letting an individual partner with different partnership interests make different choices in his different capacities would create a situation where some of a partner's partnership items would be treated as nonpartnership items and some aren't.  He argues that the word "partner" in section 6223 refers to the person holding any such interest, not to that person in his capacity as holder of a particular partnership interest.  As he sums up his position, what the Gregorys are trying to do with elections limited to their capacity as indirect partners is simultaneously opt in and opt out--and such a self-contradictory election must necessarily be ineffective.

The Gregorys have two arguments in reply.  First, they argue that, at least in this case, there is no possible bifurcation of any partnership item--no self-contradictory election, in other words--because the only items involved in this case all arise

from the alleged Son-of-BOSS deal, and all those items are allocable to the Gregorys as indirect partners. The words of limitation that they chose to use in their elections are thus without any practical effect.

Their second argument is that there's nothing self-contradictory or prohibited about having the same person make two different elections as long as each election relates to a different partnership interest. The Gregorys admit that TEFRA and its regulations do not specifically address the possibility of the same person acting in each of two different capacities. But they argue that we must fill in this gap the most reasonable way we can in light of TEFRA's overall structure and general background principles of partnership law. They claim that the more reasonable way to fill the gap is by construing the term "partner" in section 6223 to refer to a person holding a particular partnership interest, not a person holding any number of partnership interests. From this perspective, a single person with two different interests in a single partnership can make different elections for each.

We begin by quickly disposing of the Gregorys' first argument. As the Commissioner carefully notes, this case is only at the pretrial stage, and the Gregorys have not proven how the challenged partnership items were allocated to the partners or that they were in fact no longer direct partners when the deal

was done.  And even though the Gregorys may well be able to prove that they were no longer direct partners by the time they got the FPAA or even by the end of 2000, section 6226(c)(1) tells us to treat as a party any partner "who was a partner in such partnership at any time during such year."

This leaves us with the more difficult problem of whether the same person holding different partnership interests can make different elections for each.  We begin with the text.  Both parties agree that section 6231(a)(2) defines the term "partner" for purposes of TEFRA.  They also both agree that this definition includes indirect partners as well as direct partners.  The term "direct partner" isn't actually defined in the Code, but it is the common term for someone who holds a partnership interest directly in the partnership, and not through another entity. That's reasonable:  TEFRA defines an "indirect partner" as someone who holds a partnership interest "through 1 or more pass-thru partners."  Sec. 6231(a)(10).  A pass-thru partner is "a partnership, estate, trust, S corporation, nominee, or other similar person through whom other persons hold an interest in the partnership with respect to which proceedings under this subchapter are conducted."  Sec. 6231(a)(9).

The Commissioner also doesn't dispute that the Gregorys held both indirect partnership interests (through JTR-LLC and JTR-Inc.) and direct partnership interests in JT USA at different

times during the 2000 tax year.  However, the Commissioner seems

to be arguing that "partner" in the Code is an ontological

category--that once one acquires the status of a partner, by

owning either direct or indirect partnership interests or both,

any reference in the Code or regulations to one's partnership

interests means <u>all</u> of one's partnership interests.

The Gregorys argue that being a partner is not a status one

acquires and then must exercise in only one way; instead, we

should recognize that an individual can have more than one

interest in a partnership that he can treat in different ways.

And if an individual has different bundles of rights arising from

different interests, he should be viewed as a partner in relation

to each bundle, empowered to exercise his different rights in the

different bundles in different ways.

Rather than answer such metaphysical disputes abstractly, we

look to the Code and regulations governing partners to try to

discover if they take one side or the other in the dispute.

The Gregorys helpfully point out that there are several places in

the regulations that seem to recognize the possibility of

treating different partnership interests held by the same person

differently.  The two examples we find most persuasive are the

following:

- A partner (P) is both a direct partner in a
  partnership (PS) and an indirect partner in PS
  through a pass-thru partner (PTP).  P reports his
  source partnership items as a direct partner

consistently with PS under section 301.6222(a)-1T(a), Temporary Proced. & Admin. Regs., 52 Fed. Reg. 6781 (March 5, 1987). However, PTP reports its share of partnership items inconsistently with PS and informs the IRS of this inconsistency under section 301.6222(b)-1T, Temporary Proced. & Admin. Regs., 52 Fed. Reg. 6782 (March 5, 1987). P reports his share of partnership items flowing through to him from PTP consistently with PTP's treatment of the items under section 301.6222(a)-2T(c)(3), Temporary Proced. & Admin. Regs., 52 Fed. Reg. 6781 (March 5, 1987). A single partner may--indeed, should--thus take inconsistent positions if he has both direct and indirect partnership interests.

- The TMP for a partnership (PS) enters into a settlement agreement with the Commissioner. A partner (P) is bound by this settlement agreement as a nonnotice direct partner of PS. Sec. 301.6224(c)-1T(a), Temporary Proced. & Admin. Regs., 52 Fed. Reg. 6786 (March 5, 1987). P is also an indirect partner of PS through a pass-thru partner (PTP) and hasn't been separately identified under section 6223(c)(3). PTP enters into a separate settlement agreement with the Commissioner. As an unidentified indirect partner, P is bound by PTP's settlement agreement. Sec. 301.6224(c)-2T(a), Temporary Proced. & Admin. Regs., 52 Fed. Reg. 6787 (March 5, 1987).

We find the second example above especially relevant, since section 301.6224(c)-2T(a)(1) specifically states that if "an indirect partner holds a separate interest in that partnership, either directly or indirectly through a different pass-thru partner, the indirect partner shall not be bound by that settlement agreement with respect to [that separate interest]." It is hard to imagine a clearer indication that different partnership interests held by the same person may be treated differently.

And indeed, at oral argument, we hypothesized a situation in which JT USA's two direct partners had different TMPs who made different elections--say, if JTR, Inc. elected out and JTR-LLC elected in.  The Commissioner conceded (as he must given the regulation's language) that the two different direct partners are allowed to make two different elections.  Yet the Gregorys are indirect partners through both these direct partners, necessarily implying that they could indeed be treated as simultaneously in and out.

The concept of one person with multiple interests or roles that he can defend or play in different ways is nothing new in TEFRA law.  The prime example of this can be found in Barbados #6, Ltd. v. Commissioner, 85 T.C. 900 (1985).  We held there that one partner could be both a TMP and a notice partner, and that such a partner would be entitled to 150 days to file a petition from an FPAA under section 6226(b)--the initial 90 days in his capacity as the TMP plus an additional 60 days in his capacity as a notice partner.

> [W]e are simply saying here that petitioner wore two hats--one as the tax matters partner and another as a notice partner.  Since a timely petition was not filed by petitioner as the tax matters partner, we see no statutory prohibition which precludes petitioner from proceeding on its own behalf by filing a petition as a notice partner.

Id. at 905.

Our tentative conclusion that one person meeting the definition of both direct partner and indirect partner can have multiple rights and choose to exercise them in different ways is strengthened by the similar rules governing limited partnerships under state law.  Both the Uniform Limited Partnership Act, and the Revised Uniform Limited Partnership Act recognize that the same person can have a dual capacity.  As the former act states:

> A person may be both a general partner and a limited partner.  A person that is both a general and limited partner has the rights, powers, duties, and obligations provided by this [Act] and the partnership agreement in each of those capacities.  When the person acts as a general partner, the person is subject to the obligations, duties and restrictions under this [Act] and the partnership agreement for general partners. When the person acts as a limited partner, the person is subject to the obligations, duties and restrictions under this [Act] and the partnership agreement for limited partners.

Cal. Corp. Code sec. 15901.13 (West Supp. 2008); see also Cal. Corp. Code secs. 15512 and 15644 (West 2006); Unif. Ltd. Pship Act sec. 113 (2001), 6A U.L.A. 384 (2008); Revised Unif. Ltd. Pship Act sec. 404 (1976), 6B U.L.A. 263 (2008).

A careful reading of the regulation also supports this reasoning.  That regulation doesn't say that an election must cover all a partner's partnership interests, it says that "the election shall apply to all partnership items for the partnership taxable year to which the election relates."  Sec. 301.6223(e)-2T(c)(1),

Temporary Proced. & Admin. Regs., supra.  The phrase "all partnership items" obviously needs to be read as limited in some sense, lest the election of one partner in a partnership bind all his partners.  But if partner A can't bind partners B and C, then we can't see why--especially given the regulations and background principles of partnership law--partner A shouldn't be able to make different elections for each of his partnership interests, as long as each election applies to all the partnership items allocable to each partnership interest.

The Commissioner nevertheless argues that permitting the same partner to make different elections under section 6223(e) would increase the administrative burden on the IRS and lead to inconsistent results, two consequences contrary to TEFRA's major purpose.  See H. Conf. Rept. 97-760, at 599-601 (1982), 1982-2 C.B. 600, 662-63.  We agree that at a very general level allowing this to happen seems to be at odds with TEFRA's overall goal to consolidate partnership proceedings and increase consistency. The elections under section 6223(e) are only available, however, when the Commissioner fails to provide proper notice; i.e., when the TEFRA process has already gone awry and the rules need to be construed to supply a reasonable fix.

Inconsistency may also be inevitable when tiered partner- ships with multiple TMPs are involved--something the Commissioner seems to forget.  There are simply too many outside factors to

have every partner, both direct or indirect, treated identically. Just because the Gregorys had control over the pass-thru partners in this particular situation doesn't change the fact that they held two separate partnership interests.

We therefore hold that the Gregorys were allowed to make separate elections as direct and indirect partners and that their elections to opt out as indirect partners were valid. The Gregorys' elections to "opt in" in their capacity as direct partners have no effect because the default rule dictates the same result under section 6223(e)(3), a partner is bound by the TEFRA proceedings unless a proper election is made to opt out. The elections in were just a result of the incorrect letter sent out with the FPAA and have no effect one way or the other.

C. Proper Parties to This Proceeding

The Gregorys ask to be stricken from this proceeding since they no longer have an interest in the outcome as indirect partners. Sec. 6226(d)(1). They ask that we let JTR-LLC take over as the TMP for whatever is left of the proceedings. Rule 247(a) makes the TMP a party, and Rule 250 requires the Court to identify the TMP. When, as here, the petition is filed by a partner other than the TMP, section 6226(b)(6) provides that "the tax matters partner may intervene in any action brought under this subsection." Our Rule 245(a) gives him 90 days from the date that the petition was served to do so, but Rule 245(c)

allows us to enlarge that time for cause.  The Commissioner has raised no objection and, in the absence of any argument against allowing the TMP to intervene, we will construe our rule liberally and let JTR-LLC see this case through to its end.

An appropriate order will be issued.