38 A.3d 433

**Wanda T. KING**

v.

**COMPTROLLER OF the TREASURY.**

**No. 32, Sept. Term, 2011.**

Court of Appeals of Maryland.

Feb. 24, 2012.

David S. DeJong (Mark W. Schweighofer of Stein, Sperling, Bennett, DeJong, Driscoll & Greenfeig, P.C., Rockville, MD), on brief, for petitioner.

Michael J. Salem, Asst. Atty. Gen., Annapolis, MD (Douglas F. Gansler, Atty. Gen. of Maryland, Baltimore, MD), on brief, for respondent.

Argued before BELL, C.J., HARRELL, BATTAGLIA, GREENE, ADKINS, BARBERA and JOHN C. ELDRIDGE (Retired, Specially Assigned), JJ.

BATTAGLIA, J.

We are called upon to interpret Section 13–1104(c)(2)(i) of the Tax–General Article of the Maryland Code,[1] regarding the statute of limitations within which a taxpayer must file a Maryland tax refund claim after a federal audit of a partnership of which she was a limited partner. The question presented by the Petitioner, Wanda T. King, is as follows:

Did the Maryland General Assembly, in enacting TG 13–1104(c)(2)(i), intend for the statute of limitations to begin to run on Maryland refund claims on the date of a taxpayer's federal income tax liability is no longer subject to administrative appeal rather than the date that the IRS issues a report proposing adjustments to the taxpayer's liability?

---

1. Section 13–1104(c) provides, in relevant part:

(c) *Financial institution franchise tax and income tax.*—(1) Except as provided in paragraph (2) of this subsection, a claim for refund or credit of overpayment of financial institution franchise tax or income tax may not be filed after the periods of limitations for filing claims for refund or credit of overpayment set forth in § 6511 of the Internal Revenue Code.

(2) A claim for refund or credit of overpayment may not be filed later than 1 year from the date of:

(i) a final adjustment report of the Internal Revenue Service; or

(ii) a final decision of the highest court of the United States to which an appeal of a final decision of the Internal Revenue Service is taken.

Md.Code (1988, 2004 Repl.Vol.), § 13–1104(c) of the Tax–General Article. Statutory references to Sections of the Tax–General Article throughout this opinion are to Maryland Code (1988, 2004 Repl.Vol.).

We shall hold that the statute of limitations in Section 13–1104(c)(2)(i) began to run on the refund claim on the date that the Internal Revenue Service issued its report, in a Form 4549A, identifying adjustments to personal tax liability resulting from the partnership audit.

In 1982, Congress passed the Tax Equity and Fiscal Responsibility Act (Act), Pub.L. No. 97–248, 96 Stat. 648, including an amendment to the Internal Revenue Code, currently codified at Sections 6221 to 6234 of the Internal Revenue Code (2006),[2] which was designed to provide uniform treatment under federal tax law of partnership items with respect to the partners. The Act provided different procedures for auditing and examining the returns of certain partnerships than those used for individuals, various partnerships not covered by the Act, and corporations. Under the Act, the process of auditing a partnership return is divided into two steps, whereby the auditor first analyzes the partnership return, and the results of the audit are either consented to or contested by a taxpayer-partner, and thereafter, the individual partner's return is adjusted to comport with the adjustments on the partnership returns.

The gravamen of a federal audit of a partnership return under the Act is whether the line item under scrutiny should be classified as a partnership item, a non-partnership item, or an affected item. A partnership item is an item that "is more appropriately determined at the partnership level than at the partner level." I.R.C. Section 6231(a)(3). "[T]he hallmark of a partnership item is that it affects the distributive shares reported to the other partners," according to the United States Tax Court. *Grigoraci v. Commissioner,* 84 T.C.M. (CCH) 186, 189 (2002). The factors to be considered when making a determination of partnership items, according to the Code of Federal Regulations, are "the accounting practices and the legal and factual determinations that underlie the determination of the amount, timing, and characterization of

---

2. All references throughout to the Internal Revenue Code are to Title 26 of the United States Code (2006) (I.R.C.).

items of income, credit, gain, loss, deduction, etc." Treas. Reg. Section 301.6231(a)(3)–1(b) (1986).[3]

An affected item, in contrast, is an item that is affected by an adjustment to a partnership item. "Affected items come in

---

3. The Code of Federal Regulations defines partnership items as:
    (a) *In general.* For purposes of subtitle F of the Internal Revenue Code of 1954, the following items which are required to be taken into account for the taxable year of a partnership under subtitle A of the Code are more appropriately determined at the partnership level than at the partner level and, therefore, are partnership items:
    (1) The partnership aggregate and each partner's share of each of the following:
    (i) Items of income, gain loss, deduction, or credit of the partnership;
    (ii) Expenditures by the partnership not deductible in computing its taxable income (for example, charitable contributions);
    (iii) Items of the partnership which may be tax preference items under section 57(a) for any partner;
    (iv) Income of the partnership exempt from tax;
    (v) Partnership liabilities (including determinations with respect to the amount of the liabilities, whether the liabilities are nonrecourse, and changes from the preceding taxable year); and
    (vi) Other amounts determinable at the partnership level with respect to partnership assets, investments, transactions and operations necessary to enable the partnership or the partners to determine—
    (A) The investment credit determined under section 46(a);
    (B) Recapture under section 47 of the investment credit;
    (C) Amounts at risk in any activity to which section 465 applies;
    (D) The depletion allowance under section 613A with respect to oil and gas wells; and
    (E) The application of section 751(a) and (b);
    (2) Guaranteed payments;
    (3) Optional adjustments to the basis of partnership property pursuant to an election under section 754 (including necessary preliminary determinations, such as the determination of a transferee partner's basis in a partnership interest); and
    (4) Items relating to the following transactions, to the extent that a determination of such items can be made from determinations that the partnership is required to make with respect to an amount, the character of an amount, or the percentage interest of a partner in the partnership, for purposes of the partnership books and records or for purposes of furnishing information to a partner:
    (i) Contributions to the partnership;
    (ii) Distributions from the partnership; and
    (iii) Transactions to which section 707(a) applies (including the application of section 707(b)).
Treas. Reg. § 301.6231(a)(3)–1(a) (1986).

two varieties. The first are purely computational adjustments which reflect changes in a taxpayer's tax liability triggered by changes in partnership items." *JT USA LP v. Commissioner*, 131 T.C. 59, 66 n. 11 (2008).[4] A non-partnership item, somewhat syllogistically, is "an item which is (or is treated as) not a partnership item." I.R.C. Section 6231(a)(4).

The purpose of the Act was to "provide a method for adjusting 'partnership items' in a single unified proceeding, rather than in multiple separate actions against each partner." *Grigoraci*, 84 T.C.M. (CCH) at 189. To achieve this purpose, the Act mandated that "the tax treatment of any partnership item . . . shall be determined at the partnership level." I.R.C. Section 6221. Thus, when conducting an audit under the Act, such as the audit of the Baltimore Orioles Limited Partnership in issue in this case, the Internal Revenue Service (Service) will only identify adjustments to partnership items initially.

Once the items have been classified, the Service will conduct a review of the partnership items on the partnership returns to determine whether the returns were accurately completed. If the Service determines that an adjustment needs to be made to partnership items on the partnership returns, it will

---

**4.** The term "affected item" is also defined in the Code of Federal Regulations, which states in pertinent part:

  (a) *In general.* The term *affected item* means any item to the extent such item is affected by a partnership item. It includes items unrelated to the items reflected on the partnership return (for example, an item, such as the threshold for the medical expense deduction under section 213, that varies if there is a change in an individual partner's adjusted gross income).

  (b) *Basis in a partner's partnership interest.* The basis of a partner's partnership interest is an affected item to the extent it is not a partnership item.

  (c) *At-risk limitation.* The application of the at-risk limitation under section 465 to a partner with respect to a loss incurred by a partnership is an affected item to the extent it is not a partnership item.

  (d) *Passive losses.* The application of the passive loss rules under section 469 to a partner with respect to a loss incurred by a partnership is an affected item to the extent it is not a partnership item.

Treas. Reg. § 301.6231(a)(5)–1.

inform the partners of the proposed adjustments in a Form 870–PT, titled "Agreement for Partnership Items and Partnership Level Determinations as to Penalties, Additions to Tax, and Additional Amounts," which identifies the partnership items to be adjusted and the dollar amounts of such adjustments, accompanied by a Form 886–A, titled "Explanation of Items," which details the bases for the adjustments; the taxpayer-partner can consent to the adjustments by signing the Form 870–PT or can petition the Tax Court, the appropriate federal district court, or the Court of Federal Claims for review of the partnership adjustments only. I.R.C. Section 6226(a)-(b); *see also Grigoraci v. Commissioner*, 84 T.C.M. (CCH) at 189 ("[T]he Court's jurisdiction extends only to redetermining adjustments of partnership items.").

If a partner consents to the adjustments on the Form 870–PT, no other partner can challenge the partnership level determinations pursuant to Section 6224 of the Internal Revenue Code:

(c) Settlement agreement.

In the absence of a showing of fraud, malfeasance, or misrepresentation of fact—

(1) Binds all parties. A settlement agreement between the Secretary or the Attorney General (or his delegate) and 1 or more partners in a partnership with respect to the determination of partnership items for any partnership taxable year shall (except as otherwise provided in such agreement) be binding on all parties to such agreement with respect to the determination of partnership items for such partnership taxable year. An indirect partner is bound by any such agreement entered into by the pass-thru partner unless the indirect partner has been identified as provided in section 6223(c)(3).

I.R.C. Section 6224(c)(1).

Once a taxpayer-partner consents, or a settlement agreement is reached by other partners and the Service, each partner is notified that partnership return adjustments cannot be reopened, "in the absence of fraud, malfeasance, or misrep-

resentation of fact." Form 870–PT notifies the taxpayer-partner that:

> If this part of this agreement form is signed for the Commissioner, the treatment of partnership items and partnership level determinations as to penalties, additions to tax and additional amounts that relate to the adjustments to partnership items under this agreement will not be reopened in the absence of fraud, malfeasance, or misrepresentation of fact. In addition, no claim for an adjustment of partnership items, refund or credit based on any change in the treatment of partnership items or partnership level determinations as to penalties, additions to tax, and additional amounts may be filed or prosecuted.

The partnership level determinations, thus, are concluded, and the focus of the audit then shifts to any potential computational adjustments to each partner's returns. When applying the partnership level adjustments to an individual partner's tax liability, the Service makes a "computational adjustment," which, essentially, is an arithmetic operation to alter the partner's personal tax liability to conform with adjustments made to partnership items on the partnership returns, and is defined in the Internal Revenue Code as

> the change in the tax liability of a partner which properly reflects the treatment under this subchapter of a partnership item. All adjustments required to apply the results of a proceeding with respect to a partnership under this subchapter to an indirect partner shall be treated as computational adjustments.

I.R.C. Section 6231(a)(6).

The Service sends notice of the computational adjustment to the taxpayer-partner in a Form 4549 or Form 4549A, titled "Income Tax Examination Changes."[5] IRS Chief Counsel

---

5. The Service's Internal Revenue Manual defines Form 4549 as appropriate for "agreed cases for individuals and corporations," while 4549A is appropriate for "unagreed and accepted agreed cases for individuals, corporations, taxable fiduciaries, and taxable small business corpora-

Notice CC–2009–027 (Aug. 21, 2009). If the taxpayer disputes the calculations reported on Form 4549 or Form 4549A, the partner may file a claim, but only with respect to the arithmetic computations, pursuant to two sections of the Internal Revenue Code: Sections 6228(b) [6] and 6230(c). I.R.C. Section 7422(h).[7] Section 6230(c) of the Internal Revenue Code makes clear that a taxpayer can only challenge computational errors made by the Service, not the determinations upon which those computations were made:

> (4) No review of substantive issues.
>
> > For purposes of any claim or suit under this subsection, the treatment of partnership items on the partnership return, under the settlement, under the final partnership administrative adjustment, or under the decision of the court (whichever is appropriate) shall be conclusive. In addition, the determination under the final partnership administrative adjustment or under the decision of the court (whichever is appropriate) concerning the applicability of any penalty, addition to tax, or additional amount which relates to an adjustment to a partnership item shall also be conclusive. Notwithstanding the preceding sentence, the partner shall be allowed to assert any partner level defenses that may apply or to challenge the amount of the computational adjustment.

I.R.C. Section 6230(c)(4). The taxpayer-partner has six months from the date that the Service issues the Form 4549A to file a challenge to the computational adjustment, I.R.C.

---

tions." Internal Revenue Manual § 4.4.7.2.6(1) (Feb. 1, 2006), *available at* http://www.irs.gov/irm/part4/irm_04-004-007.html#d0e28.

**6.** Subsection (b) of I.R.C. Section 6228, titled "Judicial review where administrative adjustment is not allowed in full," applies only to situations in which the taxpayer requested the partnership adjustments.

**7.** I.R.C. Section 7422(h) states:

> (h) Special rule for actions with respect to partnership items.
> No action may be brought for a refund attributable to partnership items (as defined in section 6231(a)(3)) except as provided in section 6228(b) or section 6230(c).

I.R.C. § 7422(h).

Section 6230(c)(2), but if the taxpayer does not challenge the calculations reported on Form 4549A, the matter is concluded.

The Act also provided specific procedures for filing refund claims.[8] A taxpayer-partner who files a refund claim alleging erroneous computations must do so within six months of the Service issuing the notice of computational adjustment, in this case Form 4549A. I.R.C. Section 6230(c)(2)(A). A taxpayer-partner who files a refund claim for overpayment attributable to a settlement agreement (Form 870–PT) has two years from the settlement date to file his or her refund claim. I.R.C. Section 6230(c)(2)(B)(i). A taxpayer-partner who did not settle with the Service, receiving a final partnership administra-

---

8.  I.R.C. Section 6230(c) states:
    (c) Claims arising out of erroneous computations, etc.
    (1) In general
    A partner may file a claim for refund on the grounds that—
    (A) the Secretary erroneously computed any computational adjustment necessary—
    (i) to make the partnership items on the partner's return consistent with the treatment of the partnership items on the partnership return, or
    (ii) to apply to the partner a settlement, a final partnership administrative adjustment, or the decision of a court in an action brought under section 6226 or section 6228(a),
    (B) the Secretary failed to allow a credit or to make a refund to the partner in the amount of the overpayment attributable to the application to the partner of a settlement, a final partnership administrative adjustment, or the decision of a court in an action brought under section 6226 or section 6228(a), or
    (C) the Secretary erroneously imposed any penalty, addition to tax, or additional amount which relates to an adjustment to a partnership item.
    (2) Time for filing claim.
    (A) Under paragraph (1)(A) or (C)
    Any claim under subparagraph (A) or (C) of paragraph (1) shall be filed within 6 months after the day on which the Secretary mails the notice of computational adjustment to the partner.
    (B) Under paragraph (1)(B).
    Any claim under paragraph (1)(B) shall be filed within 2 years after whichever of the following days is appropriate:
    (i) the day on which the settlement is entered into,
    (ii) the day on which the period during which an action may be brought under section 6226 with respect to the final partnership administrative adjustment expires, or
    (iii) the day on which the decision of the court becomes final.

tive adjustment following the audit rather than a settlement agreement (Form 870–PT), has two years from either the expiration of the period during which he or she could have appealed the final partnership administrative adjustment or the date the decision of the court becomes final if an appeal was filed. I.R.C. Section 6230(c)(2)(B)(ii)-(iii).

Turning to the case at hand, in 2005, the Service concluded its audit, pursuant to the Tax Equity and Fiscal Responsibility Act of 1982, of the Baltimore Orioles Limited Partnership's tax returns for years 1993–1999 and adjusted various partnership items as a result of its disallowance of certain claimed deductions on the partnership returns for 1999 and 2000. Once the partnership audit was concluded, the Service sent Ms. King, one of the limited partners, two Forms 870–PT, one for year 1999 and one for year 2000 that identified the partnership items being adjusted and the amounts of the adjustments.[9] Each was accompanied by a Form 886–A that explained the results of the partnership audit. The Form 886–A regarding the partnership return for 1999 stated:

> The partnership agreement precludes BOLP [Baltimore Orioles Limited Partnership] from allocating losses pursuant to the General Sharing Percentages to the extent the losses would cause a limited partner to have an "Adjusted Capital Account Deficit" (defined as "the deficit balance ... in such Partner's Capital Account ... after giving effect to certain adjustments"). In determining whether a partner's Adjusted Capital Account has a deficit balance, the Capital Account balance is increased to the extent that the partner is obligated (or deemed obligated) to restore that Capital

---

I.R.C. § 6230(c).

**9.** The adjustments to the Baltimore Orioles Limited Partnership for year 1999 included: Amortization for Intangibles, Bonus Expense for Amateurs, Amortization for Amateur Bonuses, Amortization for Professional Bonuses, and Legal Expenses totaling $2,803,938. The year 2000 adjustments included: Amortization for Amateur Bonuses, Amortization for Professional Bonuses, Amortization for Intangibles, Legal & Professional Fees, and Professional & Consulting Fees totaling $2,992,627.

Account balance to zero. Under the partnership agreement, any loss that cannot be allocated pursuant to the General Sharing Percentage is allocable to Mr. Angelos.

On BOLP's 1999 return, losses allocated to Tom Clancy and Wanda King, as limited partners, were limited by the terms of the partnership agreement. As a result, a portion of the losses that would have otherwise been allocated to Tom Clancy and Wanda King were allocated to Peter Angelos. But as a result of the resolution of the IRS examination for years 1993 through 1999, a substantial amount of tax deductions on the originally filed income tax returns for those years was disallowed. As a result of the disallowed deductions, Mr. Clancy's and Ms. King's Capital Account balances were increased. And as a result of the increased Capital Account balances, BOLP is able to allocate its 1999 loss pursuant to the General Sharing Percentages. . . .

The Form 886–A accompanying the Form 870–PT regarding the year 2000 issued to Ms. King contained nearly identical language. Ms. King consented to the partnership item adjustments when she signed both Forms 870–PT on April 7, 2005; the Service accepted the 1999 Form on June 23, 2005 and the 2000 Form on July 29, 2005, thereby closing the partnership audit.

On January 3, 2006, the Service sent Ms. King a letter indicating the computational adjustments resulting from the partnership item adjustments for years 1999 and 2000. Accompanying this letter were two Forms 4549A, one for each of the years 1999 and 2000; two unlabeled spreadsheets, one for each year, that explained the details of the calculations on the Forms 4549A; and two Forms 886–A, titled "Explanation of Items," one for each year, that explained that the adjustments to Ms. King's individual tax liability were made pursuant to the Forms 870–PT she had signed. Ms. King did not challenge the computations reported on the Forms 4549A that she received.

The practical effect of the adjustments to the partnership items was that Ms. King's personal income tax liability was

lessened, because partnership deductions were disallowed, permitting a pass through of partnership losses to her individual return; as a result, she became eligible for a Maryland tax refund totaling $173,364 for both years. Ms. King filed a claim for refund on February 2, 2007, but the Comptroller of the Treasury denied it, stating that the refund claim was not timely filed under Section 13–1104(c)(2)(i) of the Tax–General Article, because the Service's final report regarding adjustments to her personal tax liability had been issued on January 3, 2006, more than a year before Ms. King filed for her refund on February 2, 2007. After the Comptroller denied her refund claim, Ms. King requested and received from the Service a report indicating that the computational adjustments reported on Forms 4549A were applied to her federal account on February 6, 2006.

Ms. King filed an informal appeal with the Hearings and Appeals Section of the Comptroller's Office, pursuant to Section 13–904(a)(2) of the Tax–General Article,[10] arguing that the one year statute of limitations for filing a refund claim in Maryland did not begin to run until after the expiration of the appeal period regarding errors in the calculations reported in Form 4549A, or, in the alternative, after the computational adjustment was applied to her account on February 6, 2006. The hearing officer affirmed the Comptroller's denial of Ms. King's refund claims as untimely, reasoning that because the Forms 4549A that Ms. King received were unquestionably reports and Ms. King did not challenge the calculations reported on the Forms, "the adjustments detailed on Form 4549 A–CG constitute a *final* adjustment report."[11] The hearing

---

**10.** Section 13–904 provides, in relevant part:
    (a) *Investigation and hearing required.*—The tax collector shall:
    (1) investigate each claim for refund; and
    (2) conduct a hearing at the request of the claimant prior to a final determination on the claim.
  § 13–904 of the Tax–General Article.

**11.** The designation "CG" after the report number refers to the fact that it was computer generated. *See Internal Revenue Manual*

officer, thus, determined that Ms. King's claims for refund needed to have been submitted within one year of the date the Service issued Form 4549A. The hearing officer concluded that "[t]he date the changes were implemented to the account is not the date of a final adjustment report; the Form 4549 A–CG and enclosed correspondence is the final adjustment report."

Ms. King then appealed to the Maryland Tax Court, which also ruled in favor of the Comptroller.[12] The Tax Court relied on the fact that no evidence was presented that there would have been a report generated were Ms. King to have appealed the calculations on the Forms 4549A. The court also considered significant the longstanding practice of the Comptroller's Office regarding treatment of Form 4549A under Section 13–1104(c)(2) noting, "[the Manager of the Amended Income Tax Return Unit] went on to testify that it had been the consistent long-standing administrative procedure to treat the 4549A Forms as a final adjustment report of the Internal Revenue

_____

§ 4.10.8.3.4(1) (Aug. 11, 2006), *available at* http://www.irs.gov/irm/part 4/irm_04–010–008.html#d0e575 (noting, in the context of a different form, that the designation CG after a form number indicates that it was computer generated).

**12.** Section 3–103 of the Tax–General Article outlines the jurisdiction of the Tax Court and states:

(a) *In general.*—The Tax Court has jurisdiction to hear appeals from the final decision, final determination, or final order of a property tax assessment appeal board or any other unit of the State government or of a political subdivision of the State that is authorized to make the final decision or determination or issue the final order about any tax issue, including:

(1) the valuation, assessment, or classification of property;

(2) the imposition of a tax;

(3) the determination of a claim for refund;

(4) the application for an abatement, reduction, or revision of any assessment or tax; or

(5) the application for an exemption from any assessment or tax.

(b) *Effect of section.*—This section does not affect any requirement that a decision, determination, or order be appealed to another unit of the State government or of a political subdivision of the State before an appeal is taken to the Tax Court.

§ 3–103 of the Tax–General Article.

Service." [13]  The Tax Court determined that the date the Forms 4549A were issued to Ms. King was the date upon which the one year statute of limitations began to run.

Ms. King then filed a Petition for Judicial Review in the Circuit Court for Calvert County, pursuant to Section 13–532 of the Tax–General Article of the Maryland Code.[14] The Circuit Court reversed the Tax Court determination and opined with respect to its interpretation of Section 13–1104(c)(2)(i):

> I'm persuaded in this case that the words of the statute mean the final date is the date that the appeal period on the Federal Form 4549A expires, and when you read all of those words tegether that that's what the Legislature, the plain meaning, that's what the Legislature intended—that appeal period ending, making the federal determination final.

---

**13.**  Ms. King makes much of the Tax Court's reliance on the Comptroller's longstanding practice because, she asserts, the only instruction from the Comptroller relating to a refund claim filed following a federal adjustment was:

> If the claim for refund resulted from a federal adjustment or final decision of a federal court which is more than three years from the date of filing the return or more than two years from the time the tax was paid, a claim for refund must be filed within one year from the date of the adjustment or final decision.

The quoted language comes from the year 1999 Instruction manual for Maryland tax Forms 502, 503, and 123.  Ms. King asserts that because the Comptroller's only published instruction on the matter contradicts the longstanding policy, the Tax Court improperly gave the Comptroller's policy credence.  Because we conduct our own statutory interpretation analysis, we need not address this concern.

**14.**  Section 13–532 states:

> (a) *In general.*—(1)  A final order of the Tax Court is subject to judicial review as provided for contested cases in § § 10–222 and 10–223 of the State Government Article.
> (2) Any party to the Tax Court proceeding, including a governmental unit, may appeal a final order of the Tax Court to the circuit court.
> (a) *Enforcement of orders.*—When an order of the Tax Court is subject to judicial review, that order is enforceable unless the reviewing court grants a stay upon such condition, security or bond as it deems proper.

§ 13–532 of the Tax–General Article.

The Comptroller appealed the Circuit Court's decision to the Court of Special Appeals, which, in an unreported opinion, reversed the Circuit Court, reasoning that the Circuit Court judge's determination would "run contrary to the statute's plain meaning by using an entirely different date—the date a claimant's right to an administrative appeal expires"—than the date emphasized in the statute: the date of the report. The intermediate appellate court concluded that Ms. King's interpretation of the statute would insert "an unnecessary element of uncertainty into the statutes of limitations" and, "[h]ad the legislature intended to allow for varied limitations periods, it would have done so explicitly."

The statutory section under which Ms. King's claim for refund was denied, Section 13–1104(c) of the Tax–General Article, states:

(c) *Financial institution franchise tax and income tax.—*
(1) Except as provided in paragraph (2) of this subsection, a claim for refund or credit of overpayment of financial institution franchise tax or income tax may not be filed after the periods of limitations for filing claims for refund or credit of overpayment set forth in § 6511 of the Internal Revenue Code.

(2) A claim for refund or credit of overpayment may not be filed later than 1 year from the date of:

(i) a final adjustment report of the Internal Revenue Service; or

(ii) a final decision of the highest court of the United States to which an appeal of a final decision of the Internal Revenue Service is taken.

It is not contested that the Form 4549A Ms. King received represents an adjustment report of the Internal Revenue Service. The parties also agree that Ms. King did not receive any further reports from the Service before she filed her Maryland refund claim. The point upon which they differ is what represents a "final" adjustment report in subsection (2)(i).

The Tax–General Article of the Maryland Code is silent on the definition of "final." Ms. King argues, however, that the Tax Court determination was erroneous, because, she asserts, Form 4549A does not become final until six months from the date on which it was issued as a result of the six-month period during which a taxpayer-partner could challenge the computations reported on the Form referred to in subsection (2)(i); she concludes that her refund claim, therefore, was due no later than one year and six months from the date Form 4549A was issued (January 3, 2006), so the Tax Court improperly ruled in favor of the Comptroller.

The Comptroller asserts that the Tax Court was correct in determining that Form 4549A is a "final" report and that the fact that a taxpayer *could* appeal the Service's calculations is not relevant. He posits that the bifurcated statute of limitations in Section 13–1104(c)(2) contemplates two scenarios: one in which the taxpayer does not appeal the Service's report, (2)(i), and one in which the taxpayer does appeal, (2)(ii). In the first scenario, the Comptroller argues, the one year limitation on filing a refund claim begins on the date the Form 4549A is issued. In the second, the one year limitation period would only begin once the final decision of the court to which an appeal was taken was rendered.

Ms. King's proffered interpretation of the statute at issue— that the term final adjustment report refers to the time at which an adjustment report can no longer be challenged rather than the date it is issued—cannot stand when one looks at the entire Section. The Legislature constructed 13–1104(c)(2) with three distinct parts. The first clause, "[a] claim for refund or credit of overpayment may not be filed later than 1 year from the date of," provides the framework and duration on which the subsequent subsections rely. Each subsection, then, provides the starting point to begin calculating the one year period. The statute of limitations applicable to Ms. King, thus, reads "[a] claim for refund or credit of overpayment may not be filed later than 1 year from the date of a final adjustment report of the Internal Revenue Service." The natural, plain meaning of this sentence is that the date of

the report itself is the date of the event that begins the one year limitation period. Ms. King's interpretation would require us to ignore the written language and instead read the statute as though it said "a claim for refund or credit of overpayment may not be filed later than 1 year from the date *an adjustment report of the Internal Revenue Service becomes final.*" Ms. King's interpretation would require us to add language to the Section and would introduce an element of uncertainty into the statute of limitations.[15] The Section very clearly links the terms "date" and "report," and the date of issuance is the only date on Form 4549A. Under the Maryland statute, therefore, a taxpayer-partner, such as Ms. King, who does not challenge the Service's calculations, is bound by the statute of limitations that begins to run on the date the final adjustment report is issued, without regard to the unused appeals process that was triggered.

The structure of Section 13–1104(c)(2), when viewed in conjunction with its federal analogue, also supports our interpretation. Section 13–1104(c)(2) was promulgated in response to the enactment of the Tax Equity and Fiscal Responsibility Act heretofore discussed. *See* Letter from Assistant Attorney General Gerald Langbaum to George H. Spriggs, Jr., Director of the Income Tax Division of the Comptroller's Office (Jan. 27, 1989). Section 13–1104(c)(2) is in parallel to Section 6230 of the Internal Revenue Code, which was enacted as part of the Act, involving the statutes of limitations for filing federal refund claims following a partnership audit. The statute of limitations applicable to a federal refund claim filed by a taxpayer-partner such as Ms. King, who enters into a settlement with the Service with respect to the treatment of partnership items, begins to run on the date the report, here Form 4549A, is issued or the date the settlement was agreed upon, depending on the basis for the claim. I.R.C. Sections

---

**15.** As noted above, a taxpayer-partner has six months to file some federal challenges but two years to file others. Thus, every decision about whether a Maryland refund claim was timely filed would require a factual inquiry into the types of challenges available in a specific case, rendering the Tax Code both uncertain and non-uniform.

6230(c)(2)(A)-(B)(i). The statutory appeal period is to be taken into account only in identified circumstances when calculating the time frame for filing claims, and a claim filed by a taxpayer-partner situated similarly to Ms. King would not receive the benefit of the additional time during the appeal process provided by I.R.C. Sections 6230(c)(2)(B)(ii)-(iii).

The Maryland statute is similarly constructed. Section 13–1104(c)(2) is bifurcated, such that the subsection that references court challenges applies to those taxpayer-partners who file such challenges, while the other subsection applies to those taxpayer-partners, such as Ms. King, who do not file challenges. Subsection (ii) of (c)(2) of Section 13–1104 applies to those taxpayers who challenge the Service's determination of tax liability and states that a taxpayer has one year from "a final decision of the highest court of the United States to which an appeal of a final decision of the Internal Revenue Service is taken" to file a refund claim. Subsection (i) of (c)(2) applies to taxpayer-partners who do not challenge the determinations made by the Service, and provides that the taxpayer has one year from the date of "a final adjustment report of the Internal Revenue Service" to file a claim for a refund. Just as is the case under the federal statute, the applicable Maryland statute of limitations deals only with the date of a report and, although there is a different statute of limitations that does concern appeals, Ms. King does not benefit from it because she did not challenge the information on Forms 4549A.

Ms. King previously asserted, however, that a fiscal note found in the bill file for 1989 House Bill 225 indicates that the intent of the bill was to "require[ ] that refund claims stemming from federal audit related adjustments be filed within one year of the settlement date of the federal adjustment;" she argues that the proper point at which to begin the one year statute of limitations period, then, is the settlement date. If we were to find this argument persuasive, the statute of limitations would have begun to run on July 29, 2005, when the Form 870–PT was signed as a settlement agreement; Form 4549A is an "Income Tax Examination Changes" form that does not require, or even provide for, a taxpayer's signature.

Ms. King's underlying assumption that the term "settlement date" must refer to the date on which the Service applied the computational adjustment to her federal account (February 6, 2006) does not bear fruit. Her understanding is not supported by the language of the Section nor is there any mention of the date of such application in the legislative history to which Ms. King directs this Court's attention. Moreover, as the Tax Court noted, the Service does not customarily issue a report when a computational adjustment is applied to a taxpayer-partner's account, and Ms. King did not receive such a report until she requested it following the Comptroller's denial of her claim. Thus, the Comptroller was not aware of the date the adjustment was applied to Ms. King's federal account when he received her refund claim, nor was Ms. King aware of the application date when she filed her refund claim.

Ms. King, finally, to bulwark her claim, refers us to statutes enacted in Texas and Kentucky relating to the statutes of limitations for filing state refund claims. The Texas statute states, in pertinent part, "a revenue agent's report or other adjustment is final on the date on which all administrative appeals with the Internal Revenue Service or other competent authority have been exhausted or waived." Tex. Tax Code Ann. Section 171.212(b) (West 2007).[16] The Kentucky statute states, in pertinent part, " 'Final determination of the federal audit' means the revenue agent's report or other documents reflecting the final and unappealable adjustments made by the Internal Revenue Service." Ky.Rev.Stat. Ann. Section 141.210(1)(b) (LexisNexis 2010).[17] These statutes, however,

---

**16.** The Texas statute states in pertinent part:

    (b) The taxable entity shall file the amended report under Subsection (a)(1) not later than the 120th day after the date the revenue agent's report or other adjustment is final. For purposes of this subsection, a revenue agent's report or other adjustment is final on the date on which all administrative appeals with the Internal Revenue Service or other competent authority have been exhausted or waived.

  Tex. Tax Code Ann. § 171.212(b) (West 2007).

**17.** The Kentucky statute states in pertinent part:

are explicit in their inclusion of appellate references, more in sync with Section 13–1104(c)(2)(ii), which does not apply to Ms. King.

As a result, we hold that the statute of limitations applicable to Ms. King's refund claim began to run when the Service issued to her Forms 4549A on January 3, 2006. Accordingly, Ms. King's refund claim had to have been filed within one year of that date, so that her submission on February 2, 2007 was untimely.

**JUDGMENT OF THE COURT OF SPECIAL APPEALS AFFIRMED. COSTS IN THIS COURT AND THE COURT OF SPECIAL APPEALS TO BE PAID BY PETITIONER.**

---

(1) As used in this section and KRS 141.235, unless the context requires otherwise:

(a) "Conclusion of the federal audit" means the date that the adjustments made by the Internal Revenue Service to net income as reported on the taxpayer's federal income tax return become final and unappealable; and

(b) "Final determination of the federal audit" means the revenue agent's report or other documents reflecting the final and unappealable adjustments made by the Internal Revenue Service.

Ky.Rev.Stat. Ann. § § 141.210(1)(a)-(b) (LexisNexis 2010).