**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

COMMISSIONER OF INTERNAL
REVENUE,

*Appellant,*

v.

JT USA, LP, JTR-LLC, TAX
MATTERS PARTNER,

*Appellees.*

No. 09-70219
Tax Court No.
5282-05

OPINION

On Appeal from the Order of the
United States Tax Court

Argued and Submitted
October 6, 2010—Pasadena, California

Filed January 14, 2011

Before: Harry Pregerson, Dorothy W. Nelson and
Sandra S. Ikuta, Circuit Judges.

Opinion by Judge Ikuta

## COUNSEL

Teresa E. McLaughlin and Joan I. Oppenheimer, Department of Justice, Washington, D.C., for the appellant.

Richard V. Vermazen, Law Office of Richard V. Vermazen, San Diego, California, for the appellees.

Ernest S. Ryder and Lauren A. Rinsky, Ernest S. Ryder & Associates, Inc., APLC, San Diego, California, for the appellees.

## OPINION

IKUTA, Circuit Judge:

This is an appeal from a tax court's interlocutory order in a partnership tax proceeding. We dismiss the appeal because we lack appellate jurisdiction under either the practical finality doctrine or the collateral order doctrine.

I

John Ross Gregory and his wife Rita founded JT USA, LP, a limited partnership, in the 1970s. In 2000, the Gregorys accepted an offer to sell the company that would result in a $32 million capital gain. According to the IRS, the Gregorys decided to engage in a so-called Son-of-BOSS transaction[1] to avoid the capital gains that they would otherwise incur. In furtherance of this scheme, the IRS alleges, the Gregorys trans-

---

[1] For a detailed description of the Son-of-Boss scheme, see *Kligfeld Holdings v. Comm'r*, 128 T.C. 192 (2007). In essence, it is a tax shelter whereby a taxpayer creates an artificial tax loss to offset a taxable gain. Such transactions lack economic substance and so are disregarded by the IRS when calculating a taxpayer's gains and losses. *See Coltec Indus., Inc. v. United States*, 454 F.3d 1340, 1357 (Fed. Cir. 2006).

ferred ownership of JT USA to two different entities (JT Racing, Inc., an S corporation, and JT Racing, LLC, a limited liability company), both of which they controlled. That same year, JT USA engaged in a series of transactions generating a $32.5 million loss. As a result, JT USA did not pay any capital gains taxes in 2000.

Under the applicable statute of limitations, *see* 26 U.S.C. §§ 6501, 6229(f)(1), the IRS had four years to assess a tax deficiency against JT USA for the 2000 tax year. In October 2004, a few months before the statute of limitations ran, the IRS issued a notice of final partnership administrative adjustment (FPAA) to JT USA for the 2000 tax year. An FPAA is a proposed tax adjustment calculated by the IRS, which initiates a TEFRA[2] proceeding.

The IRS made a clerical error in its issuance of the FPAA, however, in failing to notify the Gregorys about the TEFRA proceeding, as required by statute; instead, it notified only JT USA. *See* 26 U.S.C. § 6223(d)(1). Because of this error, the IRS was obliged to give the Gregorys the right to elect not to participate in the TEFRA proceeding. *See* 26 U.S.C. § 6223(e)(3)(B). The Gregorys notified the IRS that they elected to participate in the TEFRA proceeding with respect to their direct interests in JT USA[3] (i.e., their personal ownership interests in JT USA), but not with respect to their indirect interests[4] (i.e., their ownership interests in JT Racing, Inc.,

---

[2]TEFRA stands for the Tax Equity and Fiscal Responsibility Act of 1982, which governs partnership taxes.

[3]A direct interest is one held by a direct partner, i.e., someone who holds a partnership interest directly in the partnership, and not through another entity.

[4]An indirect interest is one held by an indirect partner, i.e., someone who holds a partnership interest "through 1 or more pass-thru partners." 26 U.S.C. § 6231(a)(10). A partnership or S corporation that owns a partnership interest in another entity is deemed to be a "pass-thru partner," *see* 26 U.S.C. § 6231(a)(9), and the owner of that partnership or S corporation is deemed to be an indirect partner holding only an indirect interest in that entity, *see id.* § 6231(a)(10).

and JT Racing, LLC, which gave the Gregorys an indirect ownership interest in JT USA).

After the Gregorys' election, the IRS could not proceed against the Gregorys with respect to their indirect interests in JT USA within the TEFRA proceeding. Although the IRS still had an additional year to bring such an action outside the proceeding, *see* 26 U.S.C. § 6229(f)(1), the IRS failed to do so, and the statute of limitations for bringing such an action ran at the end of 2005. Nor could the IRS proceed against JT Racing, Inc. and JT Racing, LLC within the TEFRA proceeding, because these entities were tax immune; the IRS may impose taxes only on the shareholders of S corporations and limited liability companies, not on the entities themselves. *See generally* 26 U.S.C. § 1363(a) (S corporations generally not subject to income tax); 26 U.S.C. § 701 (partnerships not subject to income tax); 26 C.F.R. § 301.7701-3 (LLC may be treated as a partnership).

Accordingly, by 2006, the IRS had only two options to recover the alleged tax deficiency. The IRS needed either to show that the Gregorys had a direct interest in JT USA at the relevant time during 2000, or to invalidate the Gregorys' election out of the TEFRA proceeding with respect to their indirect interests in JT Racing, Inc. and JT Racing, LLC.

The Gregorys brought this dispute to a head in November 2006, when they filed a petition with the Tax Court to eliminate themselves from the TEFRA proceeding, and substitute JT Racing, LLC in their place. They argued that when JT USA executed the alleged Son-of-Boss transaction, they were only indirect partners of JT USA, and because the IRS had not assessed a tax deficiency against them before the statute of limitations had run, they had no tax liability at all. In response, the IRS argued that taxpayers are not authorized to "bifurcate" their election to participate in TEFRA proceedings, and therefore the Gregorys' election out with respect to their indirect interest in JT USA was invalid.

The Tax Court rejected the Gregorys' argument that they should be dismissed because they had no direct interests in JT USA at the relevant time, noting that the case was only at the pretrial stage, and it had not yet reached the merits of that issue. The Tax Court agreed, however, that the Gregorys' bifurcated election was valid. Accordingly, in an October 8 order, it dismissed the Gregorys as indirect partners from the TEFRA proceeding and allowed JT Racing, LLC to intervene.

The IRS asked the Tax Court to certify this October 8 order for interlocutory appeal under 26 U.S.C. § 7482(a)(2)(A). The Tax Court declined, acknowledging that as a "practical matter, [the October 8 order] decided the case largely in favor of the [Gregorys]," but noting that it had not "enter[ed] a final decision in the case" and that the Gregorys could yet face liability if it turned out they were direct partners at the time of the alleged Son-of-Boss transaction. Nevertheless, the Tax Court did not object to the IRS filing a notice of appeal.

## II

**[1]** The threshold question before us is whether we have jurisdiction to hear the IRS's appeal of the Tax Court's interlocutory ruling. Absent certain exceptions not applicable here, Congress has given us appellate jurisdiction only over "final decisions" of the district court and Tax Court. 28 U.S.C. § 1291 (appellate review only over "final decisions" of the district court); *Cheng v. Comm'r*, 878 F.2d 306, 309 (9th Cir. 1989) (applying the final decision rule to review of Tax Court decisions). While Tax Court determinations in a partnership proceeding such as this "have the force and effect of a decision of the Tax Court . . . and [are] reviewable as such," 26 U.S.C. § 6226(g), they are not deemed final until the "court's order entering the decision," 26 U.S.C. § 7459(c).

**[2]** Here the Tax Court's order decided only whether the Gregorys' bifurcated election was valid, and did not address the merits of the IRS's claim. In determining whether we have

jurisdiction over such interlocutory orders, we treat our juris-
diction over appeals of Tax Court decisions "as identical to
appellate jurisdiction over district courts." *Brookes v.
Comm'r*, 163 F.3d 1124, 1129 (9th Cir. 1998). In *Brookes*, we
held that a Tax Court order resolving disputes relating to
some but not all of the tax years involved in the case was not
appealable, unless the Tax Court certified its partial decision
under Rule 54(b) of the Federal Rules of Civil Procedure. *Id.*
By the same token, the Tax Court's decision here not to cer-
tify its interlocutory order deprives us of jurisdiction, unless
the order is suitable for appellate review based on some other
principle applicable to district court decisions. The parties
have identified only two such principles here: the "practical
finality" doctrine articulated in *Gillespie v. U.S. Steel Corp.*,
379 U.S. 148 (1964), and the collateral order doctrine dis-
cussed in *Cohen v. Beneficial Industrial Loan Corp.*, 337 U.S.
541 (1949).

A

We have interpreted the practical finality doctrine nar-
rowly. *See Solis v. Jasmine Hall Care Homes, Inc.*, 610 F.3d
541, 544-46 (9th Cir. 2010) (per curiam). While *Gillespie*
"departed from the final judgment rule" by allowing federal
courts to treat an "obviously marginal case as final and
appealable" under certain circumstances, the Supreme Court
subsequently "closed the *Gillespie* door all but a crack" in
*Coopers & Lybrand v. Liveway*, 437 U.S. 463 (1978). *Id.* at
544. Accordingly, *Solis* held that appellate jurisdiction would
lie only: (1) if "the decision appealed was a marginally final
order," (2) if it "disposed of an unsettled issue of national sig-
nificance," (3) if review of the decision "implemented the
same policy Congress sought to promote in § 1292(b)"; (4) if
the parties have alerted the reviewing court to the jurisdic-
tional issue "before the parties and the court waste time ana-
lyzing merits"; and (5) the exercise of the practical finality
doctrine does not extend *Gillespie* "beyond the *unique* facts
of that case." *Id.* at 544-45. In adding the fifth factor to the

four enunciated in *Service Employees International Union, Local 102 v. County of San Diego (SEIU)*, 60 F.3d 1346 (9th Cir. 1994), we explained that we are bound by *Coopers & Lybrand*'s ruling that the *Gillespie* doctrine should be exercised only in "exceedingly rare" circumstances, to avoid rendering "the section 1291 finality requirement useless." *Id.* at 545 (internal quotation marks omitted). Because *Coopers & Lybrand* compelled that restrictive interpretation, we stated that, even where the first four factors are satisfied, "ordinarily interlocutory appeal is barred." *Id.*

**[3]** The Tax Court's order in this case does not meet the first and second factors of our practical finality test. As to the first factor, an order is "marginally final" when the "pending proceedings have little substance and will *not* affect the potentially dispositive and obviously central issue." *Wabol v. Villacrusis*, 958 F.2d 1450, 1454 (9th Cir. 1990) (emphasis added). Here, the Tax Court must still determine, among other things, whether the Gregorys were in fact no longer direct partners at the relevant time. This factual issue has significant consequences, because a determination in the IRS's favor could subject the Gregorys to personal tax liability. As to the second factor, the question whether partners holding both direct and indirect interests in a partnership may elect to participate in a TEFRA proceeding with respect to their indirect interests, but not their direct interests, while "unsettled," is not an issue of "national significance." While other partners might attempt to bifurcate their interests as the Gregorys did, this case is before us only because the IRS failed to issue the Gregorys a timely notice of the commencement of a TEFRA proceeding, and then missed the deadline for bringing a deficiency action against the Gregorys. When it takes the confluence of a clerical error and a missed deadline to make an issue important to the IRS, it is not an issue of "national significance." *Cf. Gillespie*, 437 379 U.S. at 154-55 (considering whether plaintiffs could seek damages for wrongful death other than those statutorily provided); *SEIU*, 60 F.3d at 1350 (considering the applicability of an exemption under the Fair

Labor Standards Act to a county sued for failing to pay nurses, park rangers, and probation officers overtime for "standby" time). Finally, the parties do not meet the standard set by the fifth factor: they have failed to explain why this appeal represents the sort of "albino black bear that *Gillespie* excepts from the 'final decision' requirement." *Solis*, 610 F.3d at 545.

Nor does *Pauly v. U.S. Dep't of Agriculture*, 348 F.3d 1143 (9th Cir. 2003) (per curiam) weigh against this conclusion. In *Pauly*, we held that a district court's determination that fully resolved the merits of a case was "practically final" despite the court's "extremely narrow" partial remand to an agency solely for the purpose of "a mechanical recalculation" of the amount due the plaintiffs. *Id.* at 1148. Under these circumstances, we concluded that delaying judicial review in order for an agency to complete "a ministerial task, such as the calculation of damages" was unwarranted. *Id.* This narrow "practical finality" rule is not applicable here, where the Tax Court's determination did not even address, let alone resolve, the merits of the case.

B

**[4]** The Gregorys also argue that we have jurisdiction over this appeal under the collateral order doctrine, which gives a federal appellate court authority to review a narrow class of decisions that does not "terminate the litigation, but must, in the interest of 'achieving a healthy legal system,' nonetheless be treated as 'final.' " *Digital Equip. Corp. v. Desktop Direct, Inc.*, 511 U.S. 863, 867 (1994) (internal citation omitted). The Supreme Court recently cautioned that the collateral order doctrine "must 'never be allowed to swallow the general rule that a party is entitled to a single appeal, to be deferred until final judgment has been entered.' " *Mohawk Indus., Inc. v. Carpenter*, 130 S. Ct. 599, 605 (2009) (quoting *Digital Equip. Corp.*, 511 U.S. at 868). We must be cautious in applying this doctrine, because once one order is identified as collateral, all

orders of that type must be considered collaterally. *Richardson-Merrell, Inc. v. Koller*, 472 U.S. 424, 439-40 (1985). Accordingly, the doctrine applies only if an order "[1] conclusively determine[s] the disputed question, [2] resolve[s] an important issue completely separate from the merits of the action, and [3] [is] effectively unreviewable on appeal from a final judgment." *In re Copley Press, Inc.*, 518 F.3d 1022, 1025 (9th Cir. 2008) (bracketed numbers in original) (quoting *Coopers & Lybrand*, 437 U.S. at 468) (internal quotation marks omitted).

**[5]** The October 8 order does not meet this stringent standard. Although it undoubtedly resolves an important issue separate from the merits, namely, whether the Gregorys' bifurcated election was valid, the Tax Court's decision on this issue is not effectively unreviewable on appeal from a final judgment. If the Tax Court ultimately determines that the Gregorys did not retain a direct interest in JT USA at the relevant time, and therefore do not have tax liability, the IRS will be able to appeal that ruling along with the Tax Court's prior interlocutory order that the Gregorys had authority to bifurcate their election in the TEFRA proceeding. "[A]n appeal from the final judgment draws in question all earlier non-final orders and all rulings which produced the judgment." *Grand Canyon Trust v. Tucson Elec. Power Co.*, 391 F.3d 979, 986 (9th Cir. 2004) (quoting *Munoz v. Small Bus. Admin.*, 644 F.2d 1361, 1364 (9th Cir. 1981) (internal quotation marks omitted)). Because we conclude that the Tax Court order qualifies under neither the practical finality doctrine nor the collateral order doctrine, we lack jurisdiction over this appeal.

**DISMISSED.**