**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| JT USA, LP; JTR-LLC; TAX MATTERS PARTNER, *Petitioners-Appellees*, v. COMMISSIONER OF INTERNAL REVENUE, *Respondent-Appellant*. | No. 12-70037 Tax Ct. No. 5282-05 OPINION |

Appeal from a Decision of the
United States Tax Court

Argued and Submitted
June 2, 2014—Pasadena, California

Filed November 14, 2014

Before: Stephen S. Trott and Consuelo M. Callahan, Circuit
Judges, and Mark W. Bennett, District Judge.[*]

Opinion by Judge Trott;
Dissent by Judge Callahan

---

[*] The Honorable Mark W. Bennett, District Judge for the U.S. District Court for the Northern District of Iowa, sitting by designation.

## SUMMARY[**]

### Tax

The panel remanded an appeal by the Commissioner of Internal Revenue and held that the tax court erred in concluding that taxpayers could opt out of a partnership administrative proceeding under the Tax Equity and Fiscal Responsibility Act.

The panel held that the meaning of 26 U.S.C. § 6223(e)(3)(B) is clear and unambiguous that unless a partner elects to have all of his or her partnership items treated as nonpartnership items, the partner cannot elect out of proceeding under the Tax Equity and Fiscal Responsibility Act.

Dissenting, Judge Callahan wrote that TEFRA allows one partner to make one election and another partner to make a different election, and that a partner who has both direct and indirect interests should have the same option, at least where the IRS fails to timely notify the taxpayer that a bifurcated election is not allowed.

---

[**] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

## COUNSEL

Joan I. Oppenheimer (argued), Tamara W. Ashford, Deputy Assistant Attorney General, Teresa E. McLaughlin, Tax Division Department of Justice, Washington, D.C., for Respondent-Appellant.

Richard V. Vermazen (argued), Law Office of Richard V. Vermazen, San Diego, California; Ernest S. Ryder and Lauren A. Rinsky, Ernest S. Ryder & Associates, Inc., APLC, San Diego, California, for Petitioners-Appellees.

## OPINION

TROTT, Circuit Judge:

We review de novo the Tax Court's reading and application of a TEFRA statute[1] in a convoluted action arising from (1) a partnership's attempted use of a bogus tax shelter to offset capital gains, and (2) the Commissioner of Internal Revenue's subsequent denial of a $32.5 million "loss" claimed by the partnership to eliminate income tax liability on an asset sale resulting in a $28 million capital gain. The Tax Court ruled that a taxpayer holding both direct and indirect interests in a partnership may elect under 26 U.S.C. § 6223(e)(3)(B) not to be bound by the results of a

---

[1] Congress enacted the Tax Treatment of Partnership Items Act of 1982 as Title IV of the Tax Equity and Fiscal Responsibility Act of 1982 ("TEFRA"), Pub. L. No. 97-248, §§ 401-406, 96 Stat. 324 (codified as amended at 26 U.S.C. §§ 6221-6232 (2012)).

partnership proceeding – or partnership audit[2] – as to some, but not all, of those interests held during the relevant taxable year. In other words, that § 6223(e)(3)(B) permits taxpayers to opt out of the partnership proceeding with respect to their indirect interests but to leave in that proceeding their alleged remaining direct partnership interests. The Commissioner concedes that "[i]f taxpayers' elections to opt out, but only as indirect partners, are effective, then the assessment of deficiencies flowing from about $36.6 million in adjustments (or on the order of $10 million in tax) is time-barred." Accordingly, it appears that if the IRS prevails, the taxpayers will be liable for additional taxes. Thus, their claim that this case is now moot for the lack of a controversy is groundless.

We have jurisdiction over this timely appeal pursuant to 26 U.S.C. § 7482(a)(1), and we conclude that the Tax Court's reading of the disputed statute was incorrect.[3] We also conclude that the IRS's sloppy administrative errors, including mailing the wrong form letter to the taxpayers, were

---

[2] 26 U.S.C. §§ 6221, 6231(a)(3); 26 C.F.R. § 301.6221-1.

[3] When this controversy first came to us pursuant to 26 U.S.C. § 7482(a)(2)(A) on a failed attempt by the IRS to secure an interlocutory decision on this issue, we said,

> If the Tax Court ultimately determines that the Gregorys did not retain a direct interest in JT USA at the relevant time, and therefore do not have tax liability, the IRS will be able to appeal that ruling *along with the Tax Court's prior interlocutory order that the Gregorys had authority to bifurcate their election in the TEFRA proceeding.*

*Comm'r v. JT USA, LP*, 630 F.3d 1167, 1173 (9th Cir. 2011) (emphasis added).

not sufficient either to require a different outcome or to stop the IRS from pursuing this matter and its claims. Thus, because we hold that the taxpayers' disputed elections to opt out were invalid, we remand for further proceedings consistent with this opinion.

## Background

The facts and circumstances of this case are available in the Tax Court's decision, *JT USA LP v. Comm'r*, 131 T.C. 59 (2008), and in our previous opinion in *Comm'r v. JT USA, LP*, 630 F.3d 1167, 1169–70 (9th Cir. 2011). We attach the Tax Court's opinion as an appendix and repeat the facts only as necessary to illuminate our decision. For the best "explanation of the statutory scheme for dealing with partnership matters," we refer the reader to and incorporate Justice Scalia's opinion in *United States v. Woods*, 134 S. Ct. 557, 562–63 (2013).

## 26 U.S.C. § 6223(e)(3)(B)

26 U.S.C. § 6223(e)(3)(B), entitled "Notice to Partners of Proceedings," reads in pertinent part, "In any case to which this subsection applies, if paragraph (2) does not apply, the partner shall be a party to the proceedings unless such partner elects – . . . (B) to have the partnership items of the partner for the partnership taxable year to which the proceeding relates treated as nonpartnership items."

In *Carson Harbor Village, Ltd. v. Unical Corp.*, 270 F.3d 863, 878 (9th Cir. 2001) (quoting *Caminetti v. United States*, 242 U.S. 470, 485 (1917)), we said,

> It is elementary that the meaning of a statute must, in the first instance, be sought in the language in which the act is framed, and if that is plain, . . . the sole function of the courts is to enforce it according to its terms.
>
> Where the language is plain and admits of no more than one meaning, the duty of interpretation does not arise, and the rules which are to aid doubtful meanings need no discussion.

The statute at the core of this dispute, § 6223(e)(3)(B), provides that a "partner" may elect "to have the partnership items of the partner for the partnership year to which the administrative proceedings relate treated as nonpartnership items." The statute says "the partner," not an indirect partner or any other subset of the term "partner" as defined in 26 U.S.C. § 6231(a)(2). Moreover, § 6223(e)(3)(B) allows the partner to have "the partnership items"(plural) of that partner to be treated as nonpartnership items, not *some* of that partner's items to be treated as such.

The meaning of this language is clear and unambiguous, and it means – as the Commissioner argues – that unless a partner elects to have *all* of his or her partnership items treated as nonpartnership items, the partner cannot elect out of the TEFRA proceeding. *See Exxon Mobil Corp. v. Comm'r*, 484 F.3d 731, 734 (5th Cir. 2007) ("Use of the definitive article 'the' in the statute supports a conclusion that there is one overpayment rate for each overpayment situation."). In the vernacular, § 6223(e)(3)(B) is an all-or-nothing rule, and that ends our primary inquiry.

The Tax Court's and the taxpayers' excursions into other sections of TEFRA are irrelevant. All the other TEFRA sections to which the taxpayers refer demonstrate that when Congress chose to differentiate between types of partners, they knew how to do so. As the Supreme Court remarked in *Loughrin v. United States*, ___ U.S. ___ , 134 S. Ct. 2384, 2390 (2014), "We have often noted that when 'Congress includes particular language in one section of a statute but omits it in another' – let alone the very next provision – this Court 'presume[s]' that Congress intended a different meaning." Indeed, the absence in § 6223(e)(3)(B) of the language the taxpayers would like us to read into it "provides strong affirmative evidence" that Congress did not intend it to be construed or implemented as the taxpayers wish. *United States v.Naftalin*, 441 U.S. 768, 774–75(1979). Accordingly, a partner in a TEFRA proceeding such as this is limited under § 6223(e)(3)(B) to a single election: either all in, or all out.

Here, the taxpayers tried to have their cake and eat it too. Their multiple simultaneous statements of election were entitled respectively "Statement of Election by Direct Partner Under Section 6223(e)(3)," and "Statement of Election by Indirect Partner Under Section 6223(e)(3)." Each "Indirect" partner's statement of election said that "[t]he undersigned who is an Indirect Partner is also a Direct Partner of the Partnership" and that "[t]his election does not apply to the undersigned as a Direct Partner." The statute does not permit such slight-of-hand, and the taxpayers' current claim that they did not attempt to bifurcate any partnership items in dispute going into the partnership proceeding is impeached by the record. Equally unavailing were their indisputably untimely attempts two years later to have their "elections out" cover both their indirect and direct partnership interests.

## Legislative History

Although not necessary to support our conclusion, we note that it is consistent with the official legislative history behind the statute. *See Salinas v. United States*, 522 U.S. 52, 57–58 (1997). The House Conference Report on § 6223(e) says that "the partner will be a party to the proceeding [under TEFRA] unless he elects . . . to have *all* partnership items treated as nonpartnership items." H.R. Conf. Rep. No. 97-760, at 602(1982), *reprinted in* 1982 U.S.C.C.A.N. 1190, 1374 (emphasis added).

## TEFRA

Although it dealt with a different TEFRA issue, our reading of § 6223(e)(3)(B) is also consistent with the purpose of TEFRA's partnership provisions recently reiterated by the Supreme Court in *United States v. Woods*, 134 S. Ct. 557 (2013). These provisions were enacted *inter alia* to prevent the waste of time, effort, and resources occasioned by a multiplicity of proceedings such as would occur if the Tax Court's construction of § 6223(e) were to prevail. In a normal case the Tax Court's ruling here would permit "duplicative proceedings and the potential for inconsistent treatment to partners in the same partnership," thus hindering the purpose and policy justifications that produces TEFRA. *Woods*, 134 S. Ct. at 563. Citing *Kligfeld Holdings*, 128 T.C. 192, 199–200 (2007), the Tax Court correctly recognized also that "[t]he goal of TEFRA is to have a single point of adjustment for all partnership items at the partnership level, thereby making any adjustments to a particular partnership item consistent among all the various partners." And the Tax Court acknowledged that it's reading of the statute would seem "to be at odds with TEFRA's overall goal to consolidate

partnership proceedings and increase consistency." On these points, the Tax Court was correct. Accordingly, we conclude under a proper reading of § 6223(e)(3)(B), that the taxpayers' attempted elections were ineffective.

## The Pertinent Treasury Regulation

Even if we were to agree that § 6223(e)(3)(B)'s meaning is ambiguous, which we do not, we would still be compelled to reach the same conclusion. After the enactment of § 6223(e)(3)(B), the Treasury Department issued Temp. Treas. Reg. § 301.6223(e)-2T(c)(1), 52 Fed. Reg. 6779 (Mar. 5, 1987), which was effective for the year of this controversy. The regulation tracks the language of the House Conference Report, and it provides that "the election shall apply to *all* partnership items for the partnership taxable year to which the election relates." 52 Fed. Reg. at 6785 (emphasis added). We agree with the government's argument that the regulation – which uses the words of the House Conference Report – represents a reasonable reading of the statute and, accordingly, is entitled to *Chevron* deference. *Chevron, U.S.A., Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837 (1984); *Mayo Found. for Medical Educ. & Research v. United States*, 131 S. Ct. 704, 713 (2011) ("The principles underlying our decision in *Chevron* apply with full force in the tax context.").

The taxpayers' attempt to avoid *Chevron* deference by simply offering a different interpretation of the statute and the regulation misses the point of *Chevron* deference. If the agency's reading of a statute is "a permissible construction of the statute," that reading and interpretation stands and is entitled to respect. *Alarcon v. Keller Industries, Inc.*, 27 F.3d 386, 389 (9th Cir. 1994). Such is the case here. Thus, we

remand to the tax court for further proceedings consistent with this opinion, and to determine the validity of the adjustments in the "final partnership administrative adjustment," known as the FPAA.

**REMANDED** for further proceedings.[4]

---

CALLAHAN, Circuit Judge, dissenting:

I respectfully dissent. We are here because the IRS 1) waited too long to give notice to the taxpayers of a TEFRA partnership proceeding, 2) said nothing when the taxpayers attempted to opt out of the TEFRA proceeding with respect to their indirect interests but not with respect to their direct interests,[1] and 3) then failed to bring proceedings against the taxpayers outside the TEFRA proceeding within the one-year statute of limitations. Having struck out, in effect, the IRS now seeks a do-over by disallowing the taxpayers' election to opt out of the TEFRA proceeding in order to pull the taxpayers back into the proceeding. Contrary to the majority's contention, the statute does not prohibit such a split election. TEFRA allows one partner to make one election and another partner to make a different election. I

---

[4] We find unpersuasive the taxpayers' remaining contention that (1) they are entitled to the benefits of substantial compliance, *Baccei v. United States*, 632 F.3d 1140, 1145 (9th Cir. 2011), and (2) that the IRS by its delay impliedly ratified their defective elections, *Office of Personnel Management v. Richmond*, 496 U.S. 414, 419, 422 (1990) (en banc).

[1] For convenience, I refer to the taxpayers' election out with respect to their indirect interests but not with respect to their direct interests as a "split" or "bifurcated" election.

think that a partner who has both direct and indirect interests should have the same option, at least where the IRS fails to timely notify the taxpayer that a bifurcated election is not allowed. On the facts of this case, any ambiguity in the statute as to whether a taxpayer can make separate elections based on different ownership interests should be construed in favor of the taxpayer. I would affirm the Tax Court.

I

This case concerns the IRS's attempts to recover capital gains taxes from Jon Ross Gregory and his wife Rita.**[2]** The Gregorys held both direct and indirect interests in JT USA, LP ("JT USA"), a limited partnership. The IRS issued a notice of final partnership administrative adjustment ("FPAA") to JT USA for the 2000 tax year, initiating a TEFRA proceeding. However, the IRS did not notify the Gregorys of the proceeding, as required by statute under 26 U.S.C. § 6223(d)(1). Because of this error, the Gregorys had the right to opt out of the TEFRA partnership proceeding under 26 U.S.C. § 6223(e)(3)(B). The Gregorys then notified the IRS that they were opting out of the TEFRA proceeding with respect to their indirect interests but that they had elected to participate in the proceeding with respect to their direct interests.**[3]**

---

**[2]** This background is taken from our prior decision regarding this dispute, *Commissioner v. JT USA, LP*, 630 F.3d 1167 (9th Cir. 2011).

**[3]** Once the Gregorys began to suspect that their split election would be disallowed, they sought to opt out of the TEFRA proceeding with respect to both their direct and indirect interests, with no response from the IRS.

After the Gregorys' election out of the TEFRA proceeding with respect to their indirect interests in JT USA, the IRS could have brought an action against the Gregorys outside of the TEFRA proceeding. However, the IRS failed to do so within the one-year statute of limitations, *see* 26 U.S.C. § 6229(f)(1), and the limitations period ran out at the end of 2005. Thus, "by 2006, the IRS had only two options to recover the alleged tax deficiency": either "show that the Gregorys had a direct interest in JT USA at the relevant time during 2000," or "invalidate the Gregorys' election out of the TEFRA proceeding with respect to their indirect interests." *JT USA*, 630 F.3d at 1170.

The Gregorys filed a petition with the Tax Court in 2006, arguing that they were only indirect partners of JT USA during the period at issue and that they had no tax liability because the IRS had not assessed a tax deficiency before the one-year statute of limitations had run. In response, the IRS argued that taxpayers were not authorized to "bifurcate" their election to participate in TEFRA proceedings, and therefore the Gregorys' election to opt out with respect to their indirect interest in JT USA was invalid. The Tax Court, however, found that the bifurcated election was valid and dismissed the Gregorys as indirect partners from the TEFRA proceeding.

The IRS then filed an interlocutory appeal, which we dismissed for lack of appellate jurisdiction. *Id.* at 1169. On remand, the Tax Court determined that all of the disputed adjustments related to the Gregorys' interests as indirect partners. As the Tax Court had already ruled that the Gregorys had validly elected out of the partnership proceeding in their capacity as indirect partners, it held that none the adjustments in the final partnership administrative adjustment would pass through to any individual partner's

return, and therefore the adjustments were moot.   The Commissioner then timely appealed the Tax Court's final judgment.

II

A

The statute at issue here, 26 U.S.C. § 6223(e)(3)(B), provides that where the IRS fails to provide proper notice of a TEFRA proceeding to a partner, the partner may elect "to have the partnership items of the partner for the partnership taxable year to which the proceeding relates treated as nonpartnership items."  The majority and the IRS claim that this language unambiguously states that a taxpayer may make only one election – either you opt out completely, or not at all.  The majority and the IRS err in their characterization of this statute and the applicable regulations.

The tax code expressly provides that a single individual or entity may have dual capacities as direct and indirect partners and separate rights under each capacity.  In other words, an individual may wear different "hats" and exercise its rights differently with respect to each hat.  *See*, *e.g.*, *Barbados #6 Ltd. v. Comm'r*, 85 T.C. 900, 904-05 (1985) (discussing IRC § 6226(a) and (b)).  Thus, the Gregorys were not required to make a single election with respect to their interests as direct and indirect partners.  If different partners can make their own separate elections to opt out from a TEFRA proceeding (or to stay in the proceeding) under § 6223, a single individual holding these exact same interests should be treated similarly.

The fact that the statute says "the partner" may elect out of the partnership proceeding does not show that parties with multiple partnership interests have to make a single election. The language just shows that partners may elect out of the TEFRA proceeding, regardless of whether they are direct partners, indirect partners, or otherwise. Thus if a taxpayer wearing his direct partner hat opts out, he opts out with respect to all of his direct interests. However, this need not affect his interests as an indirect partner. If the taxpayer wearing his indirect partner hat opts out, he opts out with respect to all of his interests as an indirect partner, independent of his interests as a direct partner. Such interpretation is not contrary to the statute.[4]

Nor does the pertinent Treasury regulation decide this issue. The regulation states that "[t]he election shall apply to all partnership items for the partnership taxable year to which the election relates." Miscellaneous Provisions Relating to the Tax Treatment of Partnership Items, 52 Fed. Reg. 6779, 6785 (Mar. 5, 1987). However, this regulation, just like the statute, is susceptible to an interpretation that the election applies to all the partnership items of *that particular partner*, not all of the *individual taxpayer's* interests, whether direct or indirect.

Further, as the IRS conceded at oral argument, this issue has never come up before. Thus, the IRS's position in this

---

[4] The conference report's language stated that the statute provided that a partner could opt out of the partnership proceeding with respect to *all* partnership items. Tax Equity and Fiscal Responsibility Act of 1982, 1982-2 C.B. 600, 602 (Aug. 17, 1982). However, the removal of "all" from the final language of the statute could also suggest that the drafters did not want to prohibit split elections.

appeal is only a litigating position which is not entitled to *Chevron* deference. *Accord Price v. Stevedoring Servs. of Am., Inc.*, 697 F.3d 820, 825–31 (9th Cir. 2012) (en banc) (litigating position of agency director in interpreting statute was not entitled to *Chevron* deference). Finally, we should interpret the tax code "consistent with the general rule of construction that ambiguous tax statutes are to be construed against the government and in favor of the taxpayer." *See Royal Caribbean Cruises, Ltd. v. United States*, 108 F.3d 290, 294 (11th Cir. 1997) (citations omitted). The majority's interpretation of the statute runs contrary to this general rule.

B

The majority also errs in holding that TEFRA's general policy mandates reversing the Tax Court. It is true that TEFRA was enacted to avoid duplicative proceedings and inconsistent treatment of partners in the same partnership. *See United States v. Woods*, 134 S. Ct. 557, 562–63 (2013). However, this general policy does not resolve the question of whether split elections are allowed. When Congress provided for § 6223(e)(3)'s opt-out provision, Congress determined that TEFRA's general policy against multiple proceedings should yield when the IRS does not give proper notice, as happened here. In other words, the opt-out provision is a statutorily-provided exception to the general policy. If the general policy was paramount, Congress never would have enacted § 6223(e)(3) in the first place. Allowing a split election does not thwart TEFRA's general policy any more than the statute's express provision allowing a partner to opt out due to improper notice.

III

The IRS struck out in this case: one, it failed to give the Gregorys proper notice of the TEFRA proceeding; two, it failed to object to the taxpayers' election out as indirect partners; and three, it failed to bring a proceeding against the Gregorys outside the TEFRA proceeding.  Congress specifically allows taxpayers to opt out of the TEFRA proceeding in this context, and the taxpayers did so in their capacities as indirect partners.  Moreover, especially in light of the IRS's failures, any ambiguity in the statute should be resolved in favor of the taxpayer.  I would therefore affirm the Tax Court.

**Appendix**



131 T.C. No. 7

UNITED STATES TAX COURT

JT USA LP, JOHN ROSS AND RITA GREGORY, Partners Other than
The Tax Matters Partner, Petitioners v.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 5282-05.                    Filed October 6, 2008.

    R issued a notice of final partnership administrative
adjustment (FPAA) to partnership J and its partners without
providing a notice under sec. 6223(a), I.R.C. Ps, partners
of J other than the tax matters partner, attempted to elect
out of the partnership-level proceeding only in their
capacity as indirect partners.

    Held: Section 6223 allows partners holding different
partnership interests in the same partnership to make
different elections for each interest. Ps' election,
otherwise conforming to the requirements of sec.
301.6223(e)-2T(c), Proced. & Admin. Regs., is therefore
effective.

    Held, further: The tax matters partner of J may be
substituted as petitioner, and Ps will be stricken from the
case in their capacity as indirect partners.

SERVED OCT - 6 2008

- 2 -

Ernest S. Ryder, Richard V. Vermazen, and Lauren A. Rinsky, for petitioners.

Johnathan H. Sloat and Donna F. Herbert, for respondent.

OPINION

HOLMES, Judge: In the 1970s, John Ross Gregory and his wife Rita founded the business which became JT USA, LP. It was very successful in selling accessories to enthusiasts of motocross and paintball. Over 20 years later the Gregorys decided to sell, and were faced with the problem of a large tax on a very large capital gain. Their solution was to use an alleged tax shelter to create losses large enough to offset their gain. The Commissioner has challenged those losses, but the Gregorys think they've found a way to keep them, or at least greatly increase the odds of keeping them, because of a procedural flub by the IRS.

Background

The Gregorys were both pharmacists near San Diego when John, an off-road motorcycle enthusiast, started selling motorcycle socks at a local dirt track. The small side business was a success and JT USA was born. The company focused first on motocross accessories, but when that market started to become crowded in the early 1990s, the Gregorys expanded their operation to include accessories for paintball. Paintballing took off, and

JT USA took off with it.[1] In less than a decade, it had become so successful that a superpower of paintball-equipment manufacturers, Brass Eagle, Inc., was willing to pay $32 million in cash for the business's assets.

When Brass Eagle became interested, JT USA's ownership structure was already a bit involved:[2]



---

[1] http://www.jtusa.com/company/about_us/

[2] The JT USA partnership tax return for the 2000 tax year shows partnership interests "before change or termination" totaling 118.84%. We believe this is because of the shifts in ownership during the year, though there is no explanation in the record. The exact ownership percentages don't affect our decision.

JT Racing, LLC (JTR-LLC) was the general partner and JT Racing, Inc. (JTR-Inc.), an S corporation, was a limited partner. The other direct, but limited, partners at the beginning of 2000 were the Gregorys themselves, their two daughters, and their grandson.

By the time of the asset sale, JT USA's ownership had been scaled back and was wholly owned by the Gregorys indirectly through JTR-LLC and JTR-Inc.:



The individual limited partners had sold back their partnership interests[3] so that the only partners were JTR-LLC and JTR-Inc. as the general and limited partner, respectively. This change in ownership was part of a larger reorganization of interests that the Gregorys undertook to minimize or eliminate their income tax

---

[3] The record states that JT USA redeemed the partnership interests of the two daughters and the grandson; it doesn't explain what happened to the Gregorys' partnership interests except to indicate that they no longer had direct ownership interests in JT USA by the end of the year.

on the asset sale through an alleged Son-of-BOSS transaction.[4] They also created a new general partnership called Gregory Legacy Partners whose partners consisted of the Gregorys (as trustees of a revocable family trust), the Gregorys' daughters, their grandson, and JT USA.

All of this was done to help make the alleged Son-of-BOSS transaction work, adding even more complexity to an already complex business structure. In November 2000, the Gregorys executed a short sale of treasury notes[5] and then contributed the proceeds and obligation to replace those notes (along with some separately purchased stock) to JTR-Inc. as a nontaxable addition to the capital of a corporation under section 351(a),[6] allegedly receiving a basis in the newly acquired JTR-Inc. stock of a little more than $37.2 million.[7] JTR-Inc. then contributed the cash, obligation, and additional stock to JT USA as a nontaxable contribution to the capital of a partnership under section

---

[4] See Kligfeld Holdings v. Commissioner, 128 T.C. 192 (2007), for a description of these transactions.

[5] See Kligfeld Holdings, 128 T.C. at 195 n.6, for an explanation of the short sale and see id. at 195-98, for an explanation of how taxpayers use a short sale in Son-of-BOSS deals.

[6] Unless otherwise noted, all section references are to the Internal Revenue Code in effect for the years at issue; all Rule references are to the Tax Court Rules of Practice and Procedure.

[7] Sec. 351(a) ("General Rule.--No gain or loss shall be recognized if property is transferred to a corporation by one or more persons solely in exchange for stock in such corporation and immediately after the exchange such person or persons are in control (as defined in section 368(c)) of the corporation.").

721(a), allegedly receiving a basis in the partnership interest of $37.2 million.[8] Finally, JT USA contributed the cash, obligation, and additional stock to Legacy Partners as a nontaxable contribution to that partnership's capital, also allegedly receiving a basis in its partnership interest of about $37.2 million. When everything was finished, the structure looked like this:



_____

[8] Sec. 721(a) ("General Rule.--No gain or loss shall be recognized to a partnership or to any of its partners in the case of a contribution of property to the partnership in exchange for an interest in the partnership.").

In December 2000, Legacy Partners redeemed JT USA's partnership interest for $4.1 million--the fair market value of the interest at that time. With its alleged basis of $36.6 million,[9] JT USA claimed a capital loss of $32.5 million. That loss more than offset the capital gain from the sale to Brass Eagle, which in turn meant that JTR-LLC and JTR-Inc. could supposedly claim a flow-through capital loss instead of a huge flow-through capital gain--and the Gregorys, as sole members and shareholders of those organizations, could supposedly do the same.

JT USA timely filed its 2000 tax return. The Commissioner challenged the transaction by sending a notice to JT USA on October 15, 2004, just before the statute of limitations would expire. But with this notice, he also sent the following letter, which we quote at length because of its significance:

> We were unable to mail you the notice of beginning of administrative proceeding * * * before the conclusion of the partnership proceeding. Therefore, under Section 6223(e)(2) of the Internal Revenue Code, you have the right to elect to have your partnership items treated according to either [this notice], a final court decision, or a settlement agreement with any partners for the taxable year to which the adjustment relates. If you do not make this election, the partnership items for the partnership

---

[9] These figures are from JT USA's 2000 Schedule D, Capital Gains and Losses, and as the Commissioner noted there are some inconsistencies between the partnership Schedule D and the Schedules K-1 Partner's Share of Income, Credits, Deductions, etc., but the differences don't affect our decision.

taxable year to which the proceeding relates shall be treated as nonpartnership items.

To elect to have your interest in the partnership items treated as partnership items, you must file a statement of the election with my office within 45 days from the date of this letter. It is required that the statement:

(1) Be clearly identified as an election under Internal Revenue Code Section 6223(e)(3);[10]

(2) Specify the election being made (i.e. application of final partnership administrative adjustment, court decision, or settlement agreement);

(3) Identify yourself as a partner making the election and the partnership by name, address and taxpayer identification number;

(4) Specify the partnership taxable year to which the election relates; and

(5) Be signed by the partner making the election per Treasury Reg. § 301.6223(e)-2.

This was almost certainly a form letter, and the Commissioner concedes it was the wrong form letter. See infra p.14, n.12. But the Gregorys responded to it a total of four times. John and Rita each sent a "Statement of Election by Indirect Partner Under Section 6223(e)(3)," which asked to have the "partnership items of the Indirect Partner treated as nonpartnership items." These Statements then went on to say:

---

[10] Note this reference to (e)(3) rather than (e)(2), as mentioned in the first paragraph--it'll turn out to be important.

"The undersigned who is an Indirect Partner is also a Direct Partner of the Partnership. This election does not apply to the undersigned as a Direct Partner." They also each sent a "Statement of Election by Direct Partner Under Section 6223(e)(3)," which asked to have the "partnership items of the Direct Partner treated as partnership items" and stated:

> This election is made in response to IRS correspondence dated October 15, 2004, a copy of which is attached hereto for your reference, which correspondence seems to imply that a partner must elect to be a party to the proceeding in order to have partnership items treated as partnership items, and pursuant to Regulation Section 301.6223(e)-2T which applies to partnership taxable years beginning prior to October 4, 2001.

The Gregorys sent all four statements of election on November 29, 2004.

In March 2005, the Gregorys filed a petition with this Court. In November 2006, the Gregorys moved to strike themselves as indirect partners from this case--arguing that they had properly opted out of the proceedings. As part of the same motion, they also requested that we grant JTR-LLC permission to take over the case in their stead.

Because of the importance of the issue, the Court held oral argument on the motion in San Diego--both Gregorys were California residents when they filed the petition, and the partnership had its principal place of business in California.

We must now decide (1) whether the Gregorys met the requirements for electing to opt out; (2) whether their elections out as indirect partners were effective; and (3) who the proper parties will be in this proceeding.

## Discussion

The Tax Equity and Fiscal Responsibility Act of 1982 (TEFRA), Pub. L. 97-248, 96 Stat. 324, is a set of special tax and audit rules that automatically applies to all partnerships with exceptions that aren't relevant here. Sec. 6231(a)(1). One of these rules requires JT USA to designate one of its partners as the tax matters partner (TMP) to handle its administrative issues with the Commissioner and manage any resulting litigation. Sec. 6231(a)(7). JT USA's TMP is JTR-LLC.

The goal of TEFRA is to have a single point of adjustment for all partnership items at the partnership level, thereby making any adjustments to a particular partnership item consistent among all the various partners. See Kligfeld Holdings, 128 T.C. at 199-200. TEFRA procedures generally apply if the adjusted item is a "partnership item," defined as any item "more appropriately determined at the partnership level than at the partner level." Secs. 6221, 6231(a)(3). Partnership items include the income, gains, losses, deductions and credits of a partnership. Sec. 301.6231(a)(3)-1, Proced. & Admin. Regs. Nonpartnership items are those that aren't partnership items--and

their tax treatment is determined at the individual level. Sec. 6231(a)(4). Finally, "affected items" are those that are affected by the determination of a partnership item.[11] Sec. 6231(a)(5); see Ginsburg v. Commissioner, 127 T.C. 75, 83 (2006) (outlining the different categories of adjustments under TEFRA).

This adjustment of partnership items is done through a formal process which--if everything is working as it's supposed to--starts with the IRS sending a notice at the beginning of an audit to each "notice partner," defined as a "partner whose name and address is furnished to the [Commissioner]." Secs. 6223(a), 6231(a)(8). This notice alerts the partners that an audit is underway, and gives them a chance to participate. See generally secs. 6223 and 6224. The Gregorys filed the petition in this case under subsection 6226(b) in their capacity as notice partners--thus the caption identifying them as "partners other than the tax matters partner." Once the Commissioner completes the audit, but no sooner than 120 days after he sends the first notice, he is supposed to send out a Notice of Final Partnership

---

[11] Affected items come in two varieties. The first are purely computational adjustments which reflect changes in a taxpayer's tax liability triggered by changes in partnership items. Sec. 6231(a)(6). The second are adjustments (other than penalties, additions to tax, and additional amounts that relate to adjustments to partnership items, see sec. 6226(f)) that require the Commissioner to follow normal deficiency procedures because the adjustments depend on factual determinations that have to be made at the individual partner level. Sec. 6230(a)(2)(A)(i); see also Adkison v. Commissioner, 129 T.C. 97, 102 (2007).

Administrative Adjustment (FPAA) to the TMP outlining any changes to be made. Sec. 6223(d)(1). The Commissioner then sends the FPAA to other notice partners within 60 days. Sec. 6223(d)(2).

The TMP has 90 days from the date the FPAA is sent to file a petition to contest any adjustments that the FPAA proposes. Sec. 6226(a). If he doesn't, the window for challenging the FPAA stays open for 60 more days during which any notice partner can start a case. Sec. 6226(b). Once there's a determination of all the partnership-level items--either because no one challenges the FPAA or because a decision in the case challenging the FPAA becomes final--the Commissioner may begin deficiency proceedings against any partner with affected items that require a partner-level proceeding, and may immediately assess the amount due against any other partners with affected items that don't. Sec. 6230(a)(1) and (2).

The IRS is a large organization, and Congress had the foresight to enact rules to apply after the inevitable snafus, including the snafu that happened here--the Commissioner's sending out an FPAA just in time to beat the statute of limitations but without any notice that audit proceedings had begun. The Code has two default rules that might apply in this situation. If the Commissioner waits so long to notify a partner that the time to challenge the FPAA in court has passed, the default rule is that an unnotified partner's partnership items

are treated as nonpartnership items unless the partner "opts in" to the proceedings; for example, if an unnotified partner learns of a favorable settlement agreement that he would like to glom onto. Sec. 6223(e)(2). If, however, the Commissioner notices his mistake before the FPAA becomes unchallengeable, the default rule is that an unnotified partner's partnership items remain partnership items subject to the outcome of the partnership-level proceeding unless the partner "opts out," at which point those items become nonpartnership items. Sec. 6223(e)(3). Any items that become nonpartnership items under section 6223(e) are subject to the standard deficiency procedures of sections 6211 through 6216. Sec. 6230(a)(2)(A)(ii). And the Commissioner generally has one year from the time a partner's partnership items become nonpartnership items to send a notice of deficiency to that partner. Secs. 6229(f)(1), 6503(a).

The problems in this case began when the IRS sent the FPAA to JT USA just before the statute of limitations was to expire. None of JT USA's partners received an advance notice that an audit was coming, but sending them the FPAA meant they did get notice before the time to challenge the adjustments proposed by the FPAA had run. This meant that the default rule of (e)(3), not (e)(2), applied and any partner entitled to receive notice

had the right to opt out and not the right to opt in.[12] The
Gregorys tried to do just that in their capacity as indirect
partners. The FPAA proposed adjustments only to partnership
items reflecting the alleged Son-of-BOSS transaction. By the
time JT USA did that transaction, the Gregorys argue, their
entire interest was held only in their capacity as indirect
partners. So if we determine that their election was valid, they
may well not be subject to any deficiency proceedings since their
attempted election was made more than one year ago.

A.    The Gregorys' Election

The regulations have specific requirements for an election
to opt out of TEFRA proceedings. For the 2000 tax year, those
requirements were listed in section 301.6223(e)-2T(c), Temporary
Proced. & Admin. Regs., 52 Fed. Reg. 6785 (Mar. 5, 1987):

> 1.    The election must be made within 45 days
>       after the FPAA was mailed; and

---

[12] The Commissioner has conceded that the original notice
sent to the Gregorys with the FPAA was incorrect and should have
been a notice giving the partners the option to opt out of the
TEFRA proceedings under section 6223(e)(3). However, section
6223(e)(3) is only available to partners entitled to receive
notice in the first place. Sec. 6223(e)(1). The Gregorys were
entitled to notice as direct partners since they were named on
the partnership return, but it is unclear if that means they were
also entitled to notice as indirect partners. The regulation
suggests that they were. See sec. 301.6223(e)-1T(b)(1),
Temporary Proced. & Admin. Regs., 52 Fed. Reg. 6784 (Mar. 5,
1987). In any event, the parties did not raise the issue of
what, if any, effects that possible distinction might have for
this case.

2.  The statement must:

   a.  Clearly identify that it's an election under section 6223(e)(3),

   b.  Specify that the election is to have partnership items treated as nonpartnership items,

   c.  Identify the electing partner and the partnership by name, address, and taxpayer identification number,

   d.  Specify the partnership taxable year to which the election relates, and

   e.  Be signed by the electing partner.

The election, once made, "shall apply to all partnership items for the partnership taxable year to which the election relates." Sec. 301.6223(e)-2T(c)(1), Temporary Proced. & Admin. Regs., 52 Fed. Reg. 6785 (Mar. 5, 1987).

The Gregorys have shown:

   • They made the elections exactly 45 days after the IRS sent the FPAA to the TMP;

   • Each election clearly stated that it was "made by the undersigned pursuant to Section 6223(e)(3)(B) of the Internal Revenue Code to have the partnership items of the Indirect Partner treated as nonpartnership items";

   • Each election also clearly stated the identity of both the indirect partner and the partnership by name, address, and taxpayer identification, as well as the partnership taxable year to which the election related;

   • None was signed by the Gregorys themselves, but the Commissioner has since conceded that

their power of attorney sufficed to allow him
to sign on their behalf.

The most important question left in the case, though, is whether their election is valid in the light of their choice to limit it only to all partnership items in their capacity as indirect partners.

B.   Effect of the Gregorys' Elections

The Commissioner focuses on the language of section 6223(e)(3)(B)--"to have the partnership items of the partner * * * treated as nonpartnership items"--and insists that letting an individual partner with different partnership interests make different choices in his different capacities would create a situation where some of a partner's partnership items would be treated as nonpartnership items and some aren't.  He argues that the word "partner" in section 6223 refers to the person holding any such interest, not to that person in his capacity as holder of a particular partnership interest.  As he sums up his position, what the Gregorys are trying to do with elections limited to their capacity as indirect partners is simultaneously opt in and opt out--and such a self-contradictory election must necessarily be ineffective.

The Gregorys have two arguments in reply.  First, they argue that, at least in this case, there is no possible bifurcation of any partnership item--no self-contradictory election, in other words--because the only items involved in this case all arise

from the alleged Son-of-BOSS deal, and all those items are allocable to the Gregorys as indirect partners. The words of limitation that they chose to use in their elections are thus without any practical effect.

Their second argument is that there's nothing self-contradictory or prohibited about having the same person make two different elections as long as each election relates to a different partnership interest. The Gregorys admit that TEFRA and its regulations do not specifically address the possibility of the same person acting in each of two different capacities. But they argue that we must fill in this gap the most reasonable way we can in light of TEFRA's overall structure and general background principles of partnership law. They claim that the more reasonable way to fill the gap is by construing the term "partner" in section 6223 to refer to a person holding a particular partnership interest, not a person holding any number of partnership interests. From this perspective, a single person with two different interests in a single partnership can make different elections for each.

We begin by quickly disposing of the Gregorys' first argument. As the Commissioner carefully notes, this case is only at the pretrial stage, and the Gregorys have not proven how the challenged partnership items were allocated to the partners or that they were in fact no longer direct partners when the deal

was done. And even though the Gregorys may well be able to prove that they were no longer direct partners by the time they got the FPAA or even by the end of 2000, section 6226(c)(1) tells us to treat as a party any partner "who was a partner in such partnership at any time during such year."

This leaves us with the more difficult problem of whether the same person holding different partnership interests can make different elections for each. We begin with the text. Both parties agree that section 6231(a)(2) defines the term "partner" for purposes of TEFRA. They also both agree that this definition includes indirect partners as well as direct partners. The term "direct partner" isn't actually defined in the Code, but it is the common term for someone who holds a partnership interest directly in the partnership, and not through another entity. That's reasonable: TEFRA defines an "indirect partner" as someone who holds a partnership interest "through 1 or more pass-thru partners." Sec. 6231(a)(10). A pass-thru partner is "a partnership, estate, trust, S corporation, nominee, or other similar person through whom other persons hold an interest in the partnership with respect to which proceedings under this subchapter are conducted." Sec. 6231(a)(9).

The Commissioner also doesn't dispute that the Gregorys held both indirect partnership interests (through JTR-LLC and JTR-Inc.) and direct partnership interests in JT USA at different

times during the 2000 tax year. However, the Commissioner seems to be arguing that "partner" in the Code is an ontological category--that once one acquires the status of a partner, by owning either direct or indirect partnership interests or both, any reference in the Code or regulations to one's partnership interests means all of one's partnership interests.

The Gregorys argue that being a partner is not a status one acquires and then must exercise in only one way; instead, we should recognize that an individual can have more than one interest in a partnership that he can treat in different ways. And if an individual has different bundles of rights arising from different interests, he should be viewed as a partner in relation to each bundle, empowered to exercise his different rights in the different bundles in different ways.

Rather than answer such metaphysical disputes abstractly, we look to the Code and regulations governing partners to try to discover if they take one side or the other in the dispute. The Gregorys helpfully point out that there are several places in the regulations that seem to recognize the possibility of treating different partnership interests held by the same person differently. The two examples we find most persuasive are the following:

- A partner (P) is both a direct partner in a partnership (PS) and an indirect partner in PS through a pass-thru partner (PTP). P reports his source partnership items as a direct partner

consistently with PS under section 301.6222(a)-1T(a), Temporary Proced. & Admin. Regs., 52 Fed. Reg. 6781 (March 5, 1987). However, PTP reports its share of partnership items inconsistently with PS and informs the IRS of this inconsistency under section 301.6222(b)-1T, Temporary Proced. & Admin. Regs., 52 Fed. Reg. 6782 (March 5, 1987). P reports his share of partnership items flowing through to him from PTP consistently with PTP's treatment of the items under section 301.6222(a)-2T(c)(3), Temporary Proced. & Admin. Regs., 52 Fed. Reg. 6781 (March 5, 1987). A single partner may--indeed, should--thus take inconsistent positions if he has both direct and indirect partnership interests.

- The TMP for a partnership (PS) enters into a settlement agreement with the Commissioner. A partner (P) is bound by this settlement agreement as a nonnotice direct partner of PS. Sec. 301.6224(c)-1T(a), Temporary Proced. & Admin. Regs., 52 Fed. Reg. 6786 (March 5, 1987). P is also an indirect partner of PS through a pass-thru partner (PTP) and hasn't been separately identified under section 6223(c)(3). PTP enters into a separate settlement agreement with the Commissioner. As an unidentified indirect partner, P is bound by PTP's settlement agreement. Sec. 301.6224(c)-2T(a), Temporary Proced. & Admin. Regs., 52 Fed. Reg. 6787 (March 5, 1987).

We find the second example above especially relevant, since section 301.6224(c)-2T(a)(1) specifically states that if "an indirect partner holds a separate interest in that partnership, either directly or indirectly through a different pass-thru partner, the indirect partner shall not be bound by that settlement agreement with respect to [that separate interest]." It is hard to imagine a clearer indication that different partnership interests held by the same person may be treated differently.

And indeed, at oral argument, we hypothesized a situation in which JT USA's two direct partners had different TMPs who made different elections--say, if JTR, Inc. elected out and JTR-LLC elected in. The Commissioner conceded (as he must given the regulation's language) that the two different direct partners are allowed to make two different elections. Yet the Gregorys are indirect partners through both these direct partners, necessarily implying that they could indeed be treated as simultaneously in and out.

The concept of one person with multiple interests or roles that he can defend or play in different ways is nothing new in TEFRA law. The prime example of this can be found in Barbados #6, Ltd. v. Commissioner, 85 T.C. 900 (1985). We held there that one partner could be both a TMP and a notice partner, and that such a partner would be entitled to 150 days to file a petition from an FPAA under section 6226(b)--the initial 90 days in his capacity as the TMP plus an additional 60 days in his capacity as a notice partner.

> [W]e are simply saying here that petitioner
> wore two hats--one as the tax matters partner
> and another as a notice partner. Since a
> timely petition was not filed by petitioner
> as the tax matters partner, we see no
> statutory prohibition which precludes
> petitioner from proceeding on its own behalf
> by filing a petition as a notice partner.

Id. at 905.

Our tentative conclusion that one person meeting the definition of both direct partner and indirect partner can have multiple rights and choose to exercise them in different ways is strengthened by the similar rules governing limited partnerships under state law. Both the Uniform Limited Partnership Act, and the Revised Uniform Limited Partnership Act recognize that the same person can have a dual capacity. As the former act states:

> A person may be both a general partner and a limited partner. A person that is both a general and limited partner has the rights, powers, duties, and obligations provided by this [Act] and the partnership agreement in each of those capacities. When the person acts as a general partner, the person is subject to the obligations, duties and restrictions under this [Act] and the partnership agreement for general partners. When the person acts as a limited partner, the person is subject to the obligations, duties and restrictions under this [Act] and the partnership agreement for limited partners.

Cal. Corp. Code sec. 15901.13 (West Supp. 2008); see also Cal. Corp. Code secs. 15512 and 15644 (West 2006); Unif. Ltd. Pship Act sec. 113 (2001), 6A U.L.A. 384 (2008); Revised Unif. Ltd. Pship Act sec. 404 (1976), 6B U.L.A. 263 (2008).

A careful reading of the regulation also supports this reasoning. That regulation doesn't say that an election must cover all a partner's partnership interests, it says that "the election shall apply to all partnership items for the partnership taxable year to which the election relates." Sec. 301.6223(e)-2T(c)(1),

Temporary Proced. & Admin. Regs., supra. The phrase "all partnership items" obviously needs to be read as limited in some sense, lest the election of one partner in a partnership bind all his partners. But if partner A can't bind partners B and C, then we can't see why--especially given the regulations and background principles of partnership law--partner A shouldn't be able to make different elections for each of his partnership interests, as long as each election applies to all the partnership items allocable to each partnership interest.

The Commissioner nevertheless argues that permitting the same partner to make different elections under section 6223(e) would increase the administrative burden on the IRS and lead to inconsistent results, two consequences contrary to TEFRA's major purpose. See H. Conf. Rept. 97-760, at 599-601 (1982), 1982-2 C.B. 600, 662-63. We agree that at a very general level allowing this to happen seems to be at odds with TEFRA's overall goal to consolidate partnership proceedings and increase consistency. The elections under section 6223(e) are only available, however, when the Commissioner fails to provide proper notice; i.e., when the TEFRA process has already gone awry and the rules need to be construed to supply a reasonable fix.

Inconsistency may also be inevitable when tiered partnerships with multiple TMPs are involved--something the Commissioner seems to forget. There are simply too many outside factors to

have every partner, both direct or indirect, treated identically. Just because the Gregorys had control over the pass-thru partners in this particular situation doesn't change the fact that they held two separate partnership interests.

We therefore hold that the Gregorys were allowed to make separate elections as direct and indirect partners and that their elections to opt out as indirect partners were valid. The Gregorys' elections to "opt in" in their capacity as direct partners have no effect because the default rule dictates the same result under section 6223(e)(3), a partner is bound by the TEFRA proceedings unless a proper election is made to opt out. The elections in were just a result of the incorrect letter sent out with the FPAA and have no effect one way or the other.

C.  Proper Parties to This Proceeding

The Gregorys ask to be stricken from this proceeding since they no longer have an interest in the outcome as indirect partners. Sec. 6226(d)(1). They ask that we let JTR-LLC take over as the TMP for whatever is left of the proceedings. Rule 247(a) makes the TMP a party, and Rule 250 requires the Court to identify the TMP. When, as here, the petition is filed by a partner other than the TMP, section 6226(b)(6) provides that "the tax matters partner may intervene in any action brought under this subsection." Our Rule 245(a) gives him 90 days from the date that the petition was served to do so, but Rule 245(c)

allows us to enlarge that time for cause.  The Commissioner has
raised no objection and, in the absence of any argument against
allowing the TMP to intervene, we will construe our rule
liberally and let JTR-LLC see this case through to its end.

An appropriate order will be
issued.